# Staunton.

## NEW RIVER MINERAL COMPANY V. PAINTER.

### September 12, 1902.

1. PLEADING—*Appearance—Waiver of Defects.*—Appearing to an action even for the purpose of taking or accepting a continuance is a waiver of all defects in the service of the writ.
2. PLEADING—*Declaration—Amendment—New Case.*—If an amended declaration assert rights or claims arising out of the same transaction, act, agreement or obligation as that upon which the original declaration is founded, it will not be regarded as for a new cause of action, however great may be the difference in the form of liability asserted in the two declarations. The two declarations are regarded as variations in the form of liability to meet the varying phases of the evidence as it may appear. A new case is not made by charging in the declaration a transaction as a lawful act done negligently, and charging the same transaction in an amendment as an unlawful act.
3. EVIDENCE—*Maps.*—It is not error to allow a witness, who is not an engineer or surveyor, to introduce before the jury a sketch or map of the premises in controversy, where it is shown by the witness that he is well acquainted with the premises, and that the sketch is substantially correct.
4. EVIDENCE—*Application of Grant to Subject Matter—Extrinsic Evidence.*—Extrinsic evidence is admissible to identify granted premises, and to apply the grant to its proper subject matter. This is not a question of construction, but of location, to be determined by the jury by the aid of such extrinsic evidence.
5. WRITTEN INSTRUMENTS—*Construction by Court—Instructions.*—The construction of written instruments is for the court and not for the jury, but, in determining whether the court has improperly left such construction to the jury, the instructions given by the court must be read as a whole, and if it appears that the court did construe the instrument, and that the jury accepted and followed the court's construction, that is sufficient.

Statement.

6. WRITTEN INSTRUMENTS—*Construction—Specific Enumeration Followed by General Words—Case at Bar.*—The release of a party from all damages which the releasor has sustained or may sustain by reason of the use of the waters of a branch for washing ores, and in operating machinery, whether such damages arise from the pollution of the water of the branch, or from its detention or overflowing the lands of the releasor, or from the deposit of mud, sediment or other things thereon by said branch, or from any use of said branch, does not cover damages occasioned by pumping large volumes of water from other streams into said branch, thereby greatly increasing the volume of said branch, and causing deposits of large quantities of mud, sediment, etc., on releasor's land. The general words "or from any use of said branch" must be read in connection with the other provisions of said release, and will be restricted thereby.

7. EXCESSIVE VERDICT.—This court will not set aside an award of damages by a jury as excessive where it appears that a substantial injury has been inflicted upon the plaintiff, and the verdict of the jury is for a less amount than that fixed by any one of several witnesses who testified in favor of the plaintiff.

Error to a judgment of the Hustings Court of the city of Radford, rendered December 18, 1900, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The witness who made the map referred to in paragraph 3 of the syllabus was not a surveyor or engineer. He was a lawyer. This suit was brought to the first June Rules, 1893. The premises alleged to have been injured are situated at Ivanhoe, and the witness testified that he had lived at Ivanhoe from July, 1890, till January, 1896; that he was acquainted with the location of the furnace operated by the New River Mineral Company, and with its buddles, and also with the location of the residence and storehouse of the defendant in error; that he lived during the period mentioned only a couple of hundred yards up the street from said store, and that the pencil sketch or map shown him was substantially correct as to location of buildings, streams, roads, etc.

*M. M. Caldwell* and *John C. Blair*, for the plaintiff in error.

*J. C. Wysor* and *Longley & Jordan*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

William M. Painter instituted his action of trespass on the case to recover damages for injuries to his property resulting from an overflow of water, sediment and mud thrown upon his premises by the New River Mineral Company.

I. The refusal of the court to quash the return of the sheriff upon the process issued upon the amended declaration is the first error assigned. Before the defendant made its motion to quash, it had appeared and consented to a continuance of the case. Objections which do not go to the substance of an action are treated as waived if not made when the occasion for them arises. It is a well-established rule of practice that by appearing to the action the defendant waives all defects in the process and in the service thereof. The decisions go further and imply such a waiver from the defendant's taking or consenting to a continuance as fully as they do from his pleading to the action. The object of the writ is to apprise the defendant of the nature of the proceeding against him. His taking or agreeing to a continuance is evidence of his having made himself a party to the record, and of his having recognized the case as in court. It is too late for him afterwards to say that he has not been regularly brought into court. *Harvey* v. *Skipwith*, 16 Gratt. 410, 414; 5 Rob. Pr. 101, 103.

II. The defendant moved the court to strike out the amended declaration upon the ground that it made an entirely new case from that stated in the original declaration, in this, that it charged the defendant with doing an unlawful act, whilst the original declaration charged it with doing a lawful act negligently. Upon the court's overruling this motion, the defendant demurred to the amended declaration and each count thereof

upon the same ground, which was also overruled. The action of
the court both in overruling the motion to strike out, and in re-
fusing to sustain the demurrer, is assigned as error.

If it were conceded that the case made by the original declara-
tion was for damages resulting from the negligent doing of a
lawful act, and that made by the amendment or amended
declaration was for damages caused by the doing of the same act
which was alleged to be unlawful, the rulings of the court both
upon the motion to strike out and upon the demurrer were cor-
rect.

Counsel have not cited, nor have we in our investigation
found, any decision of this court which indicates what amend-
ments of the declaration the court may allow after appearance;
but there are many decisions upon the question in other juris-
dictions. The rule generally prevailing seems to be that such
amendments will be permitted as have for their object the trial
and determination of the subject matter of the controversy upon
which the action was originally based, but amendments will not
be allowed which bring into the case a new and substantive cause
of action different from that declared on, and different from
that which the plaintiff intended to assert when he instituted his
action. If the plaintiff in the amended declaration is attempting
to assert rights and to enforce claims arising out of the same
transaction, act, agreement or obligation, however great may be
the difference in the form of liability as contained in the amended
from that stated in the original declaration, it will not be re-
garded as for a new cause of action. In such cases, the original
and amended declarations and the count or counts in each are
regarded as variations in the form of liability to meet the pos-
sible scope and varying phases of the testimony, which is one
of the very objects and purposes of adding several counts, and of
making amendments to a declaration. *Snyder* v. *Harper*, 24
W. Va. 206, 211; *Smith* v. *Palmer*, 6 Cush. 513, 519; *Yost* v.
*Ely*, 23 Pa. St. 327, 331.

The injuries complained of in the original and in the amended declaration in this case were the same. The form of action was not changed. The amendment only varied the mode of demanding the same thing—that is, damages done the same property by the same causes.

III. The plaintiff was permitted, over the defendant's objection, to introduce in evidence a pencil sketch or map of the injured premises, made by one of its witnesses who was not an engineer or surveyor, and examined him upon it. This is assigned as error. The witness testified that the sketch was substantially correct as to the location of the plaintiff's dwelling house and store, and the streams of water and street laid down upon it. The drawing, no doubt, enabled the jury better to understand the location of the damaged premises and the evidence of the witness. We are unable to see how its introduction, and the witness' examination upon it, could have injured the defendant, especially as it afterwards introduced a map of the premises by one of its witnesses, and examined him upon it.

IV. There was no valid objection to the evidence of the plaintiff offered for the purpose of identifying the spring branch mentioned in the deed of November 8, 1884, made by the plaintiff and others to the defendant. There was some controversy as to the identity of the branch. Evidence *aliunde* is always admissible where there is a question as to the application of a grant to its proper subject matter. It is not a question of construction, but of location. It is a question of fact to be determined by the jury by the aid of extrinsic evidence. *Reusens* v. *Lawson*, 91 Va. 226, 235.

V. Another error assigned is the court's action in giving instruction number one asked for by the plaintiff, and in refusing to give instructions three and four asked for by the defendant, and in giving in lieu thereof the instructions numbered five and six given by the court.

The objection made to the plaintiff's instruction numbered

one is that it took the construction of the deed and agreement under which the defendant claimed from the court, and referred their interpretation to the jury. If this had been the only instruction given there would have been much force in the defendant's objection, for no rule is better settled than that the construction of written contracts is for the court, and not for the jury. But instructions five and six given by the court in lieu of instructions numbered three and four offered by the defendant construed the said deed and agreement, and did not in fact leave their construction to the jury, as the defendant contends. The jury, by their verdict, show that they accepted and followed the court's construction of the deed and agreement, so that if any injury was done the defendant in the construction of these papers it did not result from giving the plaintiff's instruction numbered one, but in giving the court's instructions numbered five and six in lieu of the defendant's instructions three and four. Did the court properly construe the deed and agreement?

By the deed of November 8, 1884, the plaintiff and others granted to the defendant and its successors the perpetual right to the free and unobstructed use of the waters of a certain spring branch running through the plaintiff's property for the purpose of washing iron and other ores, and of operating such machinery as the defendant had already erected or might thereafter erect on the spring branch, and agreed and covenanted to release the defendant for all damages which the grantors or those claiming under them had sustained or might thereafter sustain by reason of the use of the waters of said branch by the defendant and its successors, for washing iron and other ores, and in operating machinery necessary for their manufacturing purposes, whether such damages arose from the pollution of the waters of the stream, or from its detention or overflowing the lands of the grantors, or from the deposit of mud, or sediment or other things thereon by said stream, or "from any use of said spring branch" by the grantee (defendant).

By the agreement of June 25, 1891, the plaintiff and others, parties of the first part, agreed and covenanted with the defendant and the Lobdell Car Wheel Company, that they, the parties of the second part, should have the right to construct and lay troughs through certain lots for the purpose of carrying off the water, tailings, and refuse material from the washers then erected, and to be thereafter erected, by the parties of the second part on the waters of the branch mentioned in the deed of November 8, 1884, for the purpose of washing iron and other ores. In consideration of this right to lay troughs through and over the lands of the plaintiff and others, parties of the first part, the parties of the second part agreed and bound themselves that the troughs should be of sufficient size and dimensions to carry off all the water, tailings and other waste material from the washers, and that the troughs should be kept open and unobstructed so as not to overflow and damage the lands of the parties of the first part any more than they were then liable to be overflowed and damaged by the waters of the spring branch.

At the time this agreement was entered into the defendant had ascertained that the waters of the said spring branch were not sufficient to wash all the iron ores that it wished to wash, and it was preparing, or perhaps had already commenced, to pump water from two other streams, viz., New River and Powder Mill Branch, to its washers located on the said spring branch, which increased greatly the flow of water from its washers, thus rendering it necessary to acquire the right from riparian land-owners below to convey water over or through their lands unless, as the defendant claims, it had this right as to the plaintiff, at least, under the deed of November 8, 1884. The language relied on in that deed as giving the right in question is that which releases the defendant from all damages "from any use of said spring branch" by the defendant. If the language quoted, standing alone, be susceptible of the construction contended for by the defendant, it clearly has no such meaning

when read, as it must be, in connection with the other provisions of the deed. The object of the deed as shown by its granting clause was to grant to the defendant the perpetual right to the free and unobstructed use of the waters of the spring branch for the purpose of washing iron and other ores, and of operating such machinery as the defendant had then erected or might thereafter erect on that stream, and to release the defendant from all damages which the grantors therein had sustained or might thereafter sustain by reason of the use of the waters of the branch for the purposes for which they were granted. This is the clear meaning of the deed when read as a whole. If it had been the intention of the parties to the deed that the defendant was to have the right to pump water from other streams (one of them many times as large as the spring branch) to its washers, and that those added waters should find their outlet through the channel of, or over the land adjacent to, the branch, and that the grantors in the deed, the owners of such lands, were to release all claim for damages which might result to them from such extraordinary use of the stream, language better suited for such purpose would have been used than the expression relied on. Besides, if that were the intention and effect of the deed, the agreement of June 25, 1891, was wholly unnecessary as to the plaintiff.

We are of opinion that the court properly construed the said deed and agreement in its instructions numbered five and six, and that the defendant was not prejudiced by the court's action in giving and refusing instructions.

VI. The remaining assignment of error is to the action of the court in refusing to set aside the verdict of the jury because the damages found were excessive.

The evidence tends to show that, within one year prior to the institution of the plaintiff's action, the quantity of ore washed was increased from less than one hundred tons in the dirt to more than one thousand tons; that the troughs erected under

the agreement of June 25, 1891, failed to accomplish the purposes for which they were built, were filled with mud, overflowed and flooded the low ground upon which the plaintiff's store was standing, and in which he was conducting a mercantile business, seriously damaging the building, which had cost two thousand dollars or more, covering the public road in front of it with thick mud which rendered the approach to it from that direction disagreeable and at times difficult; that two or more springs owned and controlled by the plaintiff were flooded, and the water works by which the plaintiff supplied his dwelling house, store houses, and other buildings with water were greatly damaged, if not rendered useless, during much of that year. Five or more witnesses testified as to the damages suffered by the plaintiff. They varied in their estimates. The lowest placed the damages at twenty-five hundred dollars, and the highest at five thousand dollars, or over. The jury fixed them at seventeen hundred dollars. The trial court approved the verdict, and we cannot say that it is not sustained by the evidence.

We are of opinion that there is no error in the judgment complained of, and that it should be affirmed.

*Affirmed.*