## Wytheville

JOHN W. BARNES, EXECUTOR, ETC. V. JENNIE BESS, ET ALS.

June 8, 1938.*

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

*Rehearing refused September 9, 1938.

The opinion states the case.

*Vincent L. Parker, R. Triplett* and *William G. Maupin,* for the plaintiff in error.

*A. A. Bangel* and *Thomas H. Reid,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Ackey E. Bess, a negro resident of Portsmouth, Virginia, died in 1936, leaving an estate of between eight and nine thousand dollars, consisting largely of real property. He was around seventy or seventy-five years of age at the time of his death. His wife had been dead about ten or eleven years. There was only one child of their marriage, a daughter, who was also dead. This daughter left surviving her one child, Jennie Bess, a grandchild of Ackey E. Bess, his sole surviving heir-at-law, and one of the defendants in error. The old negro man retired, in the year 1925, from a merchandise business which he had operated for many years, and from which he had accumulated his property.

On November 22, 1927, Bess consulted Thomas H. Reid, a negro lawyer, and the latter, at the request of Bess, drew up for the latter a last will and testament. In this instrument, Reid was designated as executor.

About five years later, Bess went to the office of John W. Barnes, a negro notary public in his city, the plaintiff in error, and there a second will was drawn up by Barnes for Bess. The paper writing in question here is claimed to be that will. It contains on its third and last page the signatures of Bess and two witnesses.

In answer to the question how it happened that he was named as beneficiary and as executor, Barnes made a cloudy and indefinite explanation. He said that Bess came to him, and told him that he had had some church trouble, and had been dismissed "from the Trustee Board," and wanted to change his will; and that Bess said, "I don't want him to look after my business," presumably referring to Reid, and requested Barnes to write his will and act as his executor. There is no explanation of the reason for making Barnes a substantial beneficiary other than he was not paid in money for drawing the will.

After the death of Ackey E. Bess, a paper writing purporting to be the true last will and testament drawn by John W. Barnes, dated May 15, 1932, was found in the iron safe of the decedent. Upon the motion of Barnes, it was admitted to probate in the clerk's office of the Circuit Court of the city of Portsmouth, and Barnes qualified as the executor thereof. Jennie Bess and John Elliott, a nephew of the decedent, filed an application for an appeal from the probate. Upon hearing the appeal, an issue of *devisavit vel non* was directed before a jury. The jury found that the paper writing dated May 15, 1932, was not the true last will and testament of Bess. The trial judge sustained the verdict of the jury, and entered a final judgment for the contestants of the will. The plaintiffs in error are here appealing from that judgment on the grounds that the judgment is contrary to the law and the evidence and for misdirection of the jury by the court.

The paper writing dated May 15, 1932, was attacked on the grounds of lack of proper testamentary capacity, lack of proper execution, and fraud.

The jury having found for the contestants, and their verdict having been approved by the trial judge, the first question for our consideration is whether there is any evidence to sustain the verdict and judgment.

There was some conflict in the evidence as to the testamentary capacity of the testator. While it appeared that he had acted rather oddly at certain times, and complained of a lack of memory and of suffering from vertigo, the preponderance of the evidence showed that he had the grade of mind usually found in men of his type, considering his age and physical condition.

The alleged later will made certain changes in the provisions of the first will, the most important of which was a change made in favor of John W. Barnes, the draftsman and executor of the will. To Barnes was devised a valuable piece of real estate, with a two-story building thereon, containing five or six rooms, which Barnes testified was in payment to him for his services in drawing the will. There were no changes made as to the property left to the granddaughter, Jennie Bess and the nephew, John Elliott. Some of the original devises in the first will were omitted from the second will, and Mamie Gibson, a housekeeper for the testator, was added as a substantial devisee and legatee in the latter instrument.

A physical inspection of the typewritten will of 1932, offered for probate, consisting of three pages, shows on its face the following irregularities: (1) The first page is an original and the second and third pages are carbon copies; (2) different pens were apparently used in signing the names, different ink was used, and the fastening on the manuscript cover shows that more than one set of brads had been put therein; (3) between the lines of the paragraph near the bottom of the first page making the devise to Barnes and the short following paragraph there is a difference in spacing; and (4) all of the clauses containing the devises and bequests are numbered except the devise clause immediately following the devise to Barnes. The devise to Barnes is number three. The following devising

clause on the first page has no number and the first devising clause on page two is numbered four.

Both of the attesting witnesses testified that they thought the will they signed contained only two sheets of paper, and that they signed on the second sheet. One said that each of the pages contained the same character of type, and that there was no mixture of original and carbon sheets. One of these attesting witnesses twice said in reply to questions from the trial judge that he couldn't say that he saw Bess sign the paper. The draftsman and executor was not sure whether he had made original and carbon copies at the time the will was drawn.

The evidence points plainly to numerous suspicious circumstances. The second instrument contained devises different from the previously expressed intentions of the aged man. The physical appearance of the paper writing, the irregularities thereon, the conflicting testimony with reference to the number of pages it contained, and the devise to the draftsman and executor thereof, of valuable property far in excess of a proper measure of a fee, presented the question whether these specific circumstances were sufficient to prove fraud. There is no evidence in the record whatever to show any obligation by Bess to Barnes, or any desire to reward him for friendship and affection. The devise to Barnes is so clearly disproportionate to the measure of services performed, and the extent of the estate involved, as to bear the closest scrutiny. There is no satisfactory explanation why the alleged will contained both original and carbon copies. The manner in which the devise to Barnes is squeezed in near the bottom of the first page between a numbered and an unnumbered clause, gives further rise to suspicion.

There is here more than vague suspicion and surmise. Direct proof is not necessary to overthrow a will. Any facts and circumstances are sufficient as evidence that will satisfy the jury as reasonable and fair-minded men that the paper writing is not a true last will and testament.

We do not have to assume actual fraud. But suspicious circumstances place a burden upon the proponents of a will to make a satisfactory explanation. If they fail to carry that burden, they should not profit thereby. *Redford* v. *Booker,* 166 Va. 561, 185 S. E. 879, and cases therein cited.

We have repeatedly subscribed to the principle that where the draftsman holds a position of trust or confidence, and is himself made a major beneficiary in the will, his participation creates a presumption of fraud. The courts view such conduct with disfavor. It is necessary to overcome this presumption by evidence which satisfies the jury, and it is for the jury to determine whether the burden has been borne. *Redford* v. *Booker, supra; Ferguson* v. *Ferguson,* 169 Va. 77, 192 S. E. 774; 20 R. C. L. 145.

The proponents lay great stress on evidence that the will was found in a locked safe of Bess, where it is supposed to have been kept for several years. This was a matter of evidence for the consideration of the jury. The real question, however, for the jury was whether or not the paper writing found in the safe was the paper which the testator thought he was signing, or whether the several circumstances related in the evidence indicated that it had been tampered with or altered.

This is peculiarly a case where there was a distinct advantage in having an opportunity to see and hear the witnesses testify. In view of all the circumstances, the learned trial judge rightly placed the burden of an explanation upon the proponents of the will, and directed an issue of *devisavit vel non* to go to the jury. That proceeding was not intended to inform the conscience of the court, but its object was to solve the issue and the disputed facts. The value of the verdict is the same as upon the trial of an issue of fact in a common-law action. *Redford* v. *Booker, supra.*

The conflict in the evidence was resolved in favor of the contestants of the will. The verdict was approved by the trial judge. Under such circumstances and under familiar principles, we ought not to disturb the judgment

unless there is a plain and palpable deviation from the evidence.

The probative value of the evidence was distinctly a question for the jury. Even though we take a view different from the jury, as to the measure of its value, we cannot challenge the jury for its view when there is support for their position.

Taking into consideration all of the surrounding circumstances, and the peculiar opportunity of the jury and trial judge to pass judgment on the case, we cannot say that the verdict was a plain and palpable deviation from the proof in the case.

There is no real question involved in the assignments of error with reference to the granting and refusing of instructions.

The trial court granted six of the seven instructions asked for by the proponents of the will. The six instructions set out the law fully, correctly and fairly with reference to testamentary capacity, the mode of execution of a will and the burden of proving fraud.

Error is assigned to the refusal to give instruction number 7 P. The record discloses an objection to the refusal to give this instruction, but no grounds of exception. The exception cannot now be considered, under Rule XXII of this court. However, there is no merit in the assignment of error. The instruction dealt with the question of sanity. Sanity was not an issue in the case. *Ferguson* v. *Ferguson, supra.*

The objection to instruction number 3 D, given at the request of the contestants is without merit. The instruction has been heretofore given and approved, and the reason assigned for the objection constitutes the reason for its being given. *Huff* v. *Welch,* 115 Va. 74, 79, 78 S. E. 573; *Lester's Ex'r* v. *Simpkins,* 117 Va. 55, 58, 83 S. E. 1062.

Objection is further made to the giving of instruction 1 AD, which told the jury that the proponents of the will must "prove that the testator executed the paper writing

offered as the will in the presence of two subscribing witnesses," etc.

The grounds of the exception set out that the instruction "is confusing to the jury and it does not fully state the law." The objection itself fails to set out the grounds with reasonable certainty, under Rule XXII of this court. The instruction does not fully and clearly state the law, if any conflict arose with reference to the meaning of the word "executed" unless the jury was otherwise told what that word meant.

The reply brief, however, states, and it is not denied by the plaintiffs in error, that by consent of the then counsel for both parties, the trial court permitted counsel to state to the jury that the word "executed" embraced either a signing of the will by the testator in the presence of witnesses, or the acknowledgment of his signature before the witnesses. That being true, it is difficult to see how the jury could have been misled, or any injury committed to the prejudice of the proponents of the will.

Our statutes prescribe and define the meaning of the word *execute* as applied to the making of wills. Virginia Code 1936, section 5229, is entitled "Mode of executing will prescribed." Under this section, in addition to other requisites, it is required, if the will be not "wholly in the handwriting of the testator," that the signature of the testator "shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time. * * *" Each mode is a mode of execution. A proper execution of a will may be made in either manner, if the other requisites are complied with.

For these reasons, and because there has been one fair trial before a judge and jury, who occupied an advantageous position for the consideration of the facts and circumstances, we cannot say that the final judgment is plainly wrong, or that it is not supported by any evidence.

*Affirmed.*

BROWNING, J., dissenting.

I am conscious that no novel legal principles are involved here. The facts, however, are unique and unusual and since I am not in agreement with the majority opinion in either its statement of them or its sense of their effect, I am constrained to submit my own notion of their significance. I am the bolder to do this because, as I see it, the twice-attempted effort of one to exercise the solemn and sacred right of disposing of that which is his own has been frustrated. This cannot be accounted a matter of trivial concern.

The case presents the contest of the will of Ackey E. Bess, deceased, who was a citizen of the colored race of the city of Portsmouth, Virginia. The will was attacked on three major bases, which are, first, mental incapacity of the testator, second, undue influence, and, third, fraud.

The jury rendered a verdict that the paper executed on May 15, 1932, and offered as the will, was not the true will and testament of Ackey E. Bess. The trial court confirmed the verdict of the jury.

My awareness is very real of the strength of a litigant's side of a case which is fortified by the verdict of a jury confirmed by the judgment of the trial court. We have held, in cases too numerous to cite, that where a case has been fairly submitted to a jury and a verdict fairly rendered, it ought not to be interfered with by the court, unless manifest wrong and injustice have been done, or unless the verdict is plainly not warranted by the evidence, or facts proven. The conditions enumerated which will warrant the court's interference with the verdict and judgment of the court thereon are, in our judgment, present in this case.

We said, in the case of *Southern Railway Co.* v. *Burton,* 149 Va. 364, 141 S. E. 113, through the late Chief Justice Prentis, then president of the court (page 114): "The courts have gone far, and we believe none further than this court, in enforcing the verdicts of juries; but there is a limit beyond which we should not go. That limit has been

12

reached in this case. The burden is always upon the plaintiff claiming damages to show the amount with reasonable certainty. Here the jury have only been given vague suggestions and surmises, etc.

"The verdict is unsupported by and against the evidence and will be set aside."

In the case of *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711, 712, this is said: "Where it can be seen from the evidence as a whole that the verdict has recorded a finding in plain deviation from right and justice, the court may, indeed should, set it aside."

The above cases were quoted with approval by this court, speaking through Justice Holt, in the case of *Braswell* v. *Virginia Electric Co.*, 162 Va. 27, 173 S. E. 365, which also cited the case of *Vandenbergh* v. *Buckingham Corp.*, 142 Va. 397, 411, 128 S. E. 561, 564, in which Judge Burks, (Jr.) said for the court: "Perhaps on a demurrer to the evidence by the defendant, we might be compelled to accept Vandenbergh's statement of the waiver by Johnson, but not so under our present statute (Code, sections 6251 and 6363), when to do so would strain the credulity of the court to the breaking point, and require the entry of a judgment contradicted by every other fact and circumstance of the case, in conflict with the testimony of numerous witnesses of high character, and manifestly against right and justice. It is extreme cases of this sort that the statute was enacted to meet."

Section 6363 of the Code, after declaring certain provisional conditions, concludes, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."

The judgment may be set aside if it is without evidence to support it and it may be, also, set aside when it is plainly wrong, though it is supported by some evidence. *Yanago* v. *Aetna Life Ins. Co.*, 164 Va. 258, 266, 178 S. E. 904.

This court, in the case of *Nicholson* v. *Garland*, 156 Va. 745, 158 S. E. 901, 903, cited the case of *Bohlkin* v. *Ports-*

*mouth,* 146 Va. 340, 348, 131 S. E. 790, 792, 44 A. L. R. 810: "It should be remembered that the duty of the trial judge to set aside the verdict of a jury where the same is not justified by the law and the evidence is just as imperative as is the duty to sustain the verdict where a contrary condition exists."

As to the testamentary capacity of the testator in the present case, the positive, convincing and overwhelming evidence is that he possessed that requisite throughout his business life and particularly from the date of the will in question, May 15, 1932, to the time that he died. The two subscribing witnesses to the will testified to his sanity, as did Mamie Gibson, colored, witness for the contestants, with whom the testator boarded for five years before his death and who saw him daily. Blanche Floyd, colored, another witness for the contestants, testified that to her knowledge he was a man of sound mind and remained that way. John T. Fisher, colored undertaker, in whose home the testator was a frequent visitor, said that he was a sound, sane man up to the time of his death; that he had business transactions with him and that he was a sober and industrious business man.

T. B. Coker, a rental and real estate man who attended to the testator's rental business for twenty-four years, testified that at the date of the will he was a man of sound mind and that even at the hospital, about two weeks before he died, he talked with the witness about repairs that he wanted made and that he did not veer from the subject he had in mind.

K. A. Bain, Jr., clerk of the trial court, accepted the testator as surety upon an injunction bond given on October 5, 1934, after he made oath as to his worth above any debts and applicable exemptions.

George R. Parrish, president of the bank with which the testator transacted his banking business, E. L. Lash, an insurance man and former bank president, and Dr. James Parrish, the physician who attended the testator for years and in his last illness, the four last witnesses being promi-

14

nent white citizens of the city of Portsmouth, all attested his sanity through the years embracing the period of alleged incompetency.

Against this testimony is that of Jennie Bess, one of the contestants, John Elliott, another contestant, and Charlie Jones, a witness for the contestants, all colored, whose testimony was vague, indefinite and lacking, I think, probative force.

There is no merit in the first basis of attack upon the will.

As to the second point made by the assailants, undue influence, there is no cogent and convincing testimony for its predication, and the evidence is utterly lacking to establish the contention of the existence of fraud.

We think the testimony of the witnesses who attested the will established the fact that it was legally executed. It may not be accepted as proof positive that the testator actually signed it in the presence of the attesting witnesses but beyond cavil he acknowledged it to be his will in their presence, which is a sufficient compliance with the statute.

The fact that the testator kept the will in his iron safe for some four and one-half years is almost a compelling circumstance of its approval by him. So far as the record discloses, no one knew the combination to the lock of his safe, which, upon his death, had to be opened by an expert and in the presence of Mamie Gibson, John Elliott and John W. Barnes, executor, when the identical will offered for probate was taken from the safe. Who had an opportunity to tamper with the will during the four and one-half years? Who had access to the safe but the testator?

Another most effective fact that the will was as the testator wished it to be is that, with reference to his granddaughter and nephew, the previous will of 1927 carried the same provisions.

I see nothing inherently destructive of the paper as a valid testamentary one because of its mechanics, even if it were taken apart and fastened again by other rivets, and even if one page were an original typewritten paper and another happened to be a carbon copy, and if the ink used

in one instance seemed paler than that in another place, and the written parts or features appear not to have been done with the same pen. I think none of these things should have been taken to be of sufficient potentiality as to cause the rejection of the will, because they may be so readily accounted for. No two people hold a pen exactly alike, they do not subject it to the same pressure. These circumstances may affect the impression of an observer, for a light pressure upon the pen, causing it to exude a small quantity of ink, would likely make it paler than a copious flow of the fluid.

Again, the testimony of Barnes, who wrote the will, is so perfectly direct and frank as to be convincing of its truth.

I shall make no reference to the instructions. We said in the case of *Clinchfield Coal Co.* v. *Wheeler's Adm'r,* 108 Va. 448, 62 S. E. 269, 271: "We are further of the opinion that, in view of the salient facts established by the record, no verdict could be rightfully found for the plaintiff, under any instructions. It was, therefore, error for the circuit court to refuse to set the verdict aside as contrary to the law and the evidence."

I think that the above is quite applicable to this case to the extent of the right of the contestants to recover.

The testator made provision, quite generous, for his nephew, who had been taken care of by him until he reached his majority, when he left him and joined the navy, while Mamie Gibson cared for him in his declining years. As to his reputed granddaughter, he questioned her legitimacy and racial status, which to the colored men of the type of the testator is a serious reflection and a stain as ineradicable as a leopard's spot.

In my opinion, the verdict of the jury was plainly wrong, and it should have been set aside, and the refusal of the trial court to do so was error.