# HELEN C. CARTER, ET AL.

## v.

# GERALD E. WILLIAMS, ET AL.

Record No. 921286

June 11, 1993

Present: All the Justices

*John C. Rand* for appellants.

*Eric J. Berghold (William L. Carey; Miles & Stockbridge*, on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this suit to impeach a will on the grounds of undue influence and fraud, the principal issue on appeal is whether the trial court erred in striking the contestants' evidence and entering summary judgment in favor of the proponents of the will. Resolution of this issue requires a determination whether the evidence gave rise to presumptions of undue influence and fraud that operated to shift to the proponents of the will the burden of going forward with the evidence.

I

The suit was instituted by Helen C. Carter and others, heirs at law of the testatrix, Mary A. Thompson (contestants), against Gerald E. and Peggy E. Williams (proponents). The contestants sought to impeach a writing, dated October 8, 1982, and probated on May 16, 1989, purporting to be Thompson's last will and testament.

The cause was tried to a jury, and, at the conclusion of the contestants' evidence, the trial court struck the evidence and entered summary judgment in favor of the proponents. We awarded the contestants this appeal.

II

We must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the contestants because the trial court struck their evidence. In 1974, Mary Alice Thompson executed her last will and testament devising and bequeathing her entire estate to her cousin, Mary Claudia Essig. Thompson had raised Essig as a daughter. Thompson named Essig and Bertha L. Claus, a friend, co-executors.

In 1979, Thompson initially contacted Gerald E. Williams in his capacity as an attorney at law. At that time, Williams rendered professional services to Thompson relating to a real estate settlement. In 1981, Thompson executed a general power of attorney, drafted by Williams and naming him as her attorney-in-fact.

Sometime in 1982, Thompson conversed with Williams about making a new will. At the time, Williams read Thompson's 1974 will and took extensive notes of their conversation. Thereafter, Williams drafted and personally typed the will in question. The will provided that Thompson's entire estate, except for a vase, a buffet, and an automobile, would go to Williams' wife, Peggy E. Williams. The will named Williams executor of the estate. A clause in the will stated that Thompson was making no provision for Essig because Thompson had "established a savings account or certificate of deposit" payable to Essig upon Thompson's death. Williams' notes, however, make no mention of any gift to his wife or of any reason why Essig was being excluded as a beneficiary in Thompson's new will. Williams did not send a copy of the draft of the new will to Thompson before its execution.

On October 8, 1982, Thompson returned to Williams' office to execute the will. At the time, she suffered from cataracts in both eyes. Williams did not read the will to Thompson, nor did he see Thompson read the will. Williams' brother and an associate in Williams' office witnessed the execution of the will.

After the will had been executed, Williams retained the original will and a copy. He did not charge Thompson a fee for preparing the will.

Five of Thompson's intimate friends testified that, to their knowledge, Thompson had had no contact with Peggy Williams prior to the time the 1982 will was executed. During the nearly seven years between the execution of the 1982 will and her death, Thompson told various friends that she was leaving her house to Essig or to her friend, John Alan Cummings. The record does not reveal that Thompson ever told anyone that she was leaving the bulk of her estate to Peggy Williams.

### III

First, we address the proponents' assignment of cross-error. The proponents contend that the trial court erred in failing to sustain their plea in bar on the grounds that the contestants' fraud claim was barred by the statute of limitations.

■ The contestants' bill to impeach the will was timely filed within one year from the date of probate. Code § 64.1-89. On October 15, 1991, a date well beyond the one-year limitation period, the contestants, with leave of court, filed an amended bill. On March

10, 1992, one day before the trial commenced, the proponents filed their plea in bar, claiming that the amended bill asserted a separate cause of action for fraud that was barred by the statute of limitations.

The factual allegations in both bills were identical. The original bill claimed that the proponents exercised "undue influence" in procuring the will. The amended bill claimed that the proponents exercised "undue influence and fraud" in the procurement of the will. Therefore, the sole amendment was the insertion of the words, "and fraud," following the words, "undue influence." The trial court denied the plea, reasoning that the contestants, having timely filed their original bill, could raise "new grounds" that would not constitute a new and separate cause of action. We agree.

Generally, amendments will be permitted when their object is "the trial and determination of the subject matter of the controversy upon which the action was originally based." *New River Min. Co. v. Painter*, 100 Va. 507, 510, 42 S.E. 300, 301 (1902). When the plaintiff in the amended bill attempts to assert rights and to enforce claims "arising out of the same transaction [or] act," however great the difference in the form of liability as contained in the amended bill from that as stated in the original bill, the amendment will not be viewed as stating a new cause of action. *Id.* Thus, an amendment does not constitute a new or different cause of action if it "only varied the mode of demanding the same thing." *Id.* at 511, 42 S.E. at 301-02. *Accord Vines* v. *Branch*, 244 Va. 185, 188, 418 S.E.2d 890, 892-93 (1992).

In the present case, the subject matter of the controversy was the validity of Thompson's purported last will and testament. The contestants sought a determination that, because of Williams' alleged improper conduct, the writing was not Thompson's true will. It is immaterial whether the facts alleged amount to "undue influence," "fraud," or both. The relief the contestants sought, impeachment of the will, arose out of the same transaction or act. Indeed, the alleged facts surrounding Williams' conduct were not changed by the amendment. The amendment varied only the mode of demanding the same relief. Consequently, we conclude that the trial court did not err in denying the plea in bar.

## IV

Next, we consider whether the trial court erred in striking the contestants' evidence. In so ruling, the court concluded that the contestants "failed to offer any evidence in support of their claims of undue influence and fraud." The contestants assert that *Barnes* v. *Bess*, 171 Va. 1, 197 S.E. 403 (1938), is instructive in this case.

*Barnes* is similar to the present case in that the draftsman of a will was charged with fraud. *Id.* at 5, 197 S.E. at 404. In that case, the draftsman was a notary public and a substantial beneficiary in the will. *Id.* The will contained devises and bequests different from those expressed by the testator in a prior will. *Id.* at 6, 197 S.E. at 404-05. Other suspicious circumstances were in evidence relating to the physical appearance of the contested document. *Id.* at 6-7, 197 S.E. at 405.

In *Barnes*, we stated that direct evidence is not necessary to impeach a will and that circumstantial evidence will suffice if it is strong enough to convince a jury that the writing is not the true last will of the decedent. *Id.* at 7, 197 S.E. at 405. After noting that "suspicious circumstances place a burden upon the proponents of a will to make a satisfactory explanation," *id.* at 8, 197 S.E. at 405, we stated the following:

> We have repeatedly subscribed to the principle that where the draftsman holds a position of trust or confidence, and is himself made a major beneficiary in the will, his participation creates a presumption of fraud. The courts view such conduct with disfavor. It is necessary to overcome this presumption by evidence which satisfies the jury, and it is for the jury to determine whether the burden has been borne.

*Id.*

In the present case, Williams, as Thompson's attorney and attorney-in-fact, held a position of great trust and confidence. Although Williams' wife was made a major beneficiary in Thompson's will, nothing in the record suggests that Thompson and Peggy Williams were related or were close friends at the time the will was executed. Indeed, the record supports the inference that Thompson barely knew Peggy Williams. This is a suspicious circumstance.

Moreover, other suspicious circumstances surround the execution of the will. Although Williams took copious notes of his conference

with Thompson, his notes made no mention of the gift to his wife. His notes also failed to address the reason why Essig, whom Thompson had raised as a daughter and who was the sole beneficiary in Thompson's 1974 will, was not a beneficiary in Thompson's new will. Williams did not send a draft copy of the will to Thompson before the will was executed. He did not read the will to her, nor did he see her read the will. After the will was executed, Williams retained the original will and a copy.

We think these circumstances, as well as others in evidence, gave rise to a presumption of fraud that operated to shift to Williams the burden of producing evidence to rebut the presumption. It was for the jury to determine whether this burden had been met. We reach this conclusion even though Williams was not the *direct* beneficiary in the will. By naming his wife as a beneficiary, Williams became an *indirect* beneficiary, and that, coupled with the other suspicious circumstances, was sufficient to raise the presumption. We hold, therefore, that the trial court erred in striking the contestants' evidence as it related to the alleged fraud of the draftsman. The ultimate burden of persuasion, however, remains upon the contestants. *Martin* v. *Phillips*, 235 Va. 523, 526, 369 S.E.2d 397, 399 (1988).

We further hold, however, that the trial court did not err in striking the contestants' evidence as it pertained to the claim of undue influence. There was no direct evidence of undue influence, and the circumstantial evidence was insufficient to raise a presumption of undue influence. In *Martin*, we said that

to raise a presumption of undue influence in the execution of a will, the evidence must show that (1) the testator was enfeebled in mind when the will was executed, (2) the requisite confidential or fiduciary relationship was accompanied by activity in procuring or preparing the favorable will, and (3) the testator previously had expressed a contrary intention to dispose of his property.

235 Va. at 528, 369 S.E.2d at 400. Although the second and third components were present in the case at bar, there was no evidence to support the first, *i.e.*, that Thompson was enfeebled in mind.

## V

■ We briefly address the contestants' other assignments of error because the issues may arise again on retrial. The contestants argue that the trial court erred in excluding evidence that Williams violated certain disciplinary rules adopted by the Virginia State Bar. We do not agree. The Code of Professional Responsibility does not provide a basis for private causes of action. *Ayyildiz* v. *Kidd,* 220 Va. 1080, 1085, 266 S.E.2d 108, 112 (1980). We also find no merit in the contestants' remaining assignments of error.

## VI

Accordingly, we will affirm the trial court in all of its rulings except for the striking of the contestants' evidence relating to Williams' alleged fraud. We will reverse the judgment and remand the case for a new trial limited to the issue of fraud.

*Affirmed in part,*
*reversed in part,*
*and remanded.*