PRESENT:  All the Justices

ROY GRUBB, ET AL.

v.   Record No. 051859

ERNEST E. GRUBB, INDIVIDUALLY AND AS
EXECUTOR OF THE LAST WILL AND TESTAMENT
OF EVA BELLE LOGAN, DECEASED

                                        OPINION BY
                            JUSTICE BARBARA MILANO KEENAN
                                     June 8, 2006

ERNEST E. GRUBB, INDIVIDUALLY AND AS
EXECUTOR OF THE LAST WILL AND TESTAMENT
OF EVA BELLE LOGAN, DECEASED

v.  Record No. 051860

ROY GRUBB, ET AL.

           FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                     C. Randall Lowe, Judge

     In these consolidated appeals, we consider an executor's

claim that the chancellor erred in ordering him to pay to the

decedent's estate the value of certain assets in which the

executor asserted an ownership interest.  We also consider

claims by certain of the decedent's siblings that the chancellor

erred: 1) in determining that he could not adjudicate the

executor's responsibility to reimburse the estate for the value

of one contested asset because a necessary party was not before

the court; 2) in refusing to award prejudgment interest; and 3)

in declining to require the executor to pay an award of costs

and attorneys' fees pursuant to Rule 4:12(c).

In November 1996, Eva Belle Logan (Logan) executed a general durable power of attorney naming her brother, Ernest E. Grubb (Ernest), as her attorney in fact. Logan died in February 1999. In addition to Ernest, Logan was survived by three other brothers, W. H. Grubb, Roy Grubb, and Gilbert Grubb, and by three sisters, Reba Grubb, Lula Mae Freeman, and Katherine G. Davenport.[1] In her last will and testament, Logan named Ernest executor of her estate and directed that her estate be divided in equal shares among her seven siblings.

According to the inventory Ernest filed, Logan's probate estate included assets of $326,783.74, with an additional $418,727.77 held outside the estate in funds Logan maintained in various joint bank accounts. This latter amount was divided among the following accounts: 1) $251,630.06 held in eight certificates of deposit issued by Wachovia Bank, formerly known as Central Fidelity Bank, that were listed as jointly owned by Logan and Ernest (Wachovia certificates); 2) $75,000.00 held in one certificate of deposit issued by Highlands Union Bank that was listed as jointly owned by Logan and Ernest (Highlands certificate); 3) $11,528.81 held in one certificate of deposit issued by Bank of America, formerly known as NationsBank, that was listed as jointly owned by Logan and Ernest (Bank of America certificate); 4) $58,068.90 held in one Bank of America checking

_____

[1] Reba Grubb died in February 2001.

account that was listed as jointly owned by Logan and Ernest (Bank of America checking account); and 5) $5,000.00 held in one certificate of deposit issued by Wachovia that was listed as jointly owned by Logan and Ernest's granddaughter, Meagan Marie Grubb (Meagan).[2] Each of the Wachovia and Highlands certificates was designated as a "Joint Account – With Survivorship."

After obtaining Logan's power of attorney, Ernest either opened or renewed several of the above accounts that were not included in the inventory for the probate estate. The bank records involving these accounts did not indicate whether Ernest was previously listed as a joint owner on the accounts. However, Ernest maintained that Logan had placed his name on the various certificates before he received her power of attorney, and that his actions after November 1996 on accounts showing him as a joint owner were limited to the renewal of existing joint accounts.

This litigation began when a lawsuit concerning certain real estate was filed against all the Grubb siblings in the circuit court. Three of Ernest's siblings, Roy Grubb, Gilbert Grubb, and Katherine G. Davenport (collectively, Roy), filed a cross bill against Ernest, alleging that Ernest improperly used his power of attorney to transfer assets from Logan's sole

---

[2] An additional $17,500.00 was held in bonds, which Ernest distributed to various members of Logan's family without objection.

ownership to accounts jointly owned by her and Ernest with rights of survivorship. Roy also alleged that Ernest committed constructive and actual fraud by adding his name to the accounts without Logan's knowledge and consent, and by entering her signature on the documents that created or renewed the joint accounts. Roy asked that the court order the amounts at issue returned to Logan's estate so that they could be distributed equally among the surviving siblings in accordance with the terms of Logan's will.[3]

Before trial, the parties obtained the deposition testimony of Mary M. Millsap, an employee of the Abingdon branch of Wachovia Bank (the bank) since 1989. Millsap testified that she personally dealt with Ernest on all but two of the Wachovia financial instruments at issue. Although the bank had not retained copies of any original certificates, Millsap stated that based on the bank's policy she was certain that Ernest's name was on each of the accounts before their renewal.

According to Millsap, under the bank's policy, "[i]f you were joint owner on an account with a customer and then after that you became their power of attorney, you could come in and renew that certificate for that person using your power of

---

[3] The chancellor granted the complainant's motion to sever the action pending in the bill of complaint from the action pending in the cross bill. The original complaint is not at issue in this appeal.

4

attorney." Millsap also stated that the bank would not allow an individual to add his name to a certificate using a power of attorney if the certificate did not previously list his name. In such a circumstance, Millsap explained, the person seeking to add his name to the account would need the account owner to sign a signature card making the attorney in fact a joint owner of the certificate. During the deposition, Roy objected to substantial portions of Millsap's testimony on the grounds of hearsay and violations of the "best evidence rule."

At the beginning of trial, Roy offered Millsap's deposition testimony into evidence. Roy submitted the deposition without qualification, despite the earlier objections he had noted during portions of Millsap's testimony. The chancellor admitted Millsap's deposition without addressing Roy's earlier objections.

As part of his case, Roy presented Ernest as a witness. Ernest gave equivocal testimony regarding the signatures on the financial instruments. He initially testified that he could not recall whether Logan signed the documents or whether he signed them on her behalf. However, he later testified that he witnessed Logan sign each document.

With regard to the Highlands certificate, which was purchased after Ernest obtained Logan's power of attorney, Ernest admitted that all the money used to purchase the

5

certificate came from Logan's assets.  However, Ernest could not recall whether he or Logan signed the document to procure the Highlands certificate, but contended that Logan wished to share the account with him.

Dr. Larry S. Miller, a forensic document examiner who qualified as an expert witness, also testified as part of Roy's case.  He opined that Ernest, not Logan, actually signed Logan's name on all but one of the Wachovia certificates at issue.

At the conclusion of Roy's case, Ernest made a motion to strike the evidence.  The chancellor denied the motion, holding that Roy's evidence raised a rebuttable presumption of constructive fraud.

Ernest presented evidence on his own behalf, including the testimony of his brother, W. H. Grubb, who recalled the close relationship between Logan and Ernest.  In addition, Ernest again testified that Logan made him a joint owner on each of the accounts in question before giving him her power of attorney, and that he renewed the certificates at issue with Logan's consent.  However, Ernest failed to produce documentary evidence confirming the existence of any jointly owned certificates that he alleged existed before Logan provided him her power of attorney.

In a letter opinion, the chancellor first concluded that Meagan was not properly before the court and that, therefore,

the ownership of the Wachovia certificate listing her and Logan as joint owners could not be determined. With regard to the eight Wachovia certificates that named Logan and Ernest as joint owners, the chancellor determined that only one of the documents used to obtain or renew these certificates was actually signed by Logan. The chancellor found that the remaining seven accounts, in the total amount of $239,624.83, were created by Ernest using his power of attorney and, thus, Ernest's actions involving these accounts were subject to a presumption of constructive fraud.

The chancellor further concluded that Ernest had not rebutted the presumption of constructive fraud, stating that "Ernest [had] not proven the existence of any records that indicate [the Wachovia] accounts were joint with survivorship prior to the execution of the power of attorney." The chancellor directed that these funds be paid to Logan's estate. The chancellor did not rule on the objections raised by Roy at Millsap's deposition, nor did the chancellor indicate to what degree he had considered Millsap's testimony in reaching his conclusions regarding the Wachovia certificates.

Additionally, the chancellor concluded that Ernest failed to rebut the presumption of constructive fraud regarding the Highlands certificate because that instrument was purchased using money Logan acquired from the sale of her property. The

7

chancellor further directed that the funds from this account be paid to Logan's estate. The chancellor also ordered that Ernest pay to the estate the funds from the two disputed Bank of America accounts.[4]

After the chancellor issued his letter opinion, Roy filed a motion pursuant to Rule 4:12(c) requesting attorneys' fees and costs for Ernest's failure to admit during the discovery process that he signed Logan's name on the various accounts. Roy also requested an award of prejudgment interest on the funds that the chancellor ordered returned to the estate.

The chancellor denied Roy's request for costs and attorneys' fees, as well as his request for prejudgment interest. However, the chancellor ordered that Ernest pay to Logan's estate the interest accrued during the litigation on the funds that Ernest was found to have fraudulently converted.

Ernest appeals from the chancellor's final decree ordering Ernest to pay to Logan's estate the funds from the Highlands certificate and the seven Wachovia certificates that the chancellor found Ernest fraudulently converted. He asserts that

---

[4] In his brief on appeal, Ernest does not refer to the Bank of America certificate and checking account nor does he reference exhibits 16 and 17, the documentary evidence pertaining to those accounts. Therefore, we conclude that he has waived argument regarding those accounts. See Rule 5:27 and 5:17(c)(3) and (4); Whitley v. Commonwealth, 260 Va. 482, 492, 538 S.E.2d 296, 301 (2000); Carstensen v. Chrisland Corp., 247 Va. 433, 445, 442 S.E.2d 660, 667 (1994); Quesinberry v. Commonwealth, 241 Va. 364, 370, 402 S.E.2d 218, 222 (1991).

Millsap's deposition testimony was undisputed that the Wachovia certificates listed him as a joint owner before he obtained Logan's power of attorney. He further contends that the chancellor should not have applied a presumption of constructive fraud because Ernest proved that as a joint owner of the accounts, he merely renewed the accounts in order to maintain the "status quo." With regard to the Highlands certificate, Ernest likewise maintains that the evidence established that he was an owner of the account before being granted power of attorney. In the alternative, Ernest argues that if the chancellor was correct in applying a presumption of constructive fraud to Ernest's actions as attorney in fact, the evidence showed that he rebutted that presumption. We disagree with Ernest's arguments.

Ernest had a confidential relationship with Logan in which Ernest acted as Logan's attorney in fact and provided her advice on many financial matters. As a result of this confidential relationship, Ernest owed a fiduciary duty to Logan. See Economopoulos v. Kolaitis, 259 Va. 806, 812, 528 S.E.2d 714, 718 (2000); Jackson v. Seymour, 193 Va. 735, 740-41, 71 S.E.2d 181, 184-85 (1952); Nicholson v. Shockey, 192 Va. 270, 278, 64 S.E.2d 813, 817-18 (1951).

Based on Ernest's status as Logan's attorney in fact, any transaction involving her assets that he consummated to his own

9

benefit while acting as her fiduciary is presumptively fraudulent. See Economopoulos, 259 Va. at 812, 528 S.E.2d at 718; Nicholson, 192 Va. at 277-78, 64 S.E.2d at 817-18. When a presumption of constructive fraud arises, the burden of proof shifts to the fiduciary to produce clear and convincing evidence to rebut the presumption.[5] Creasy v. Henderson, 210 Va. 744, 749-50, 173 S.E.2d 823, 828 (1970); Nicholson, 192 Va. at 277, 64 S.E.2d at 817; see Carter v. Williams, 246 Va. 53, 59, 431 S.E.2d 297, 300 (1993). This rule arises independently of any evidence of actual fraud, or of any limitations of age or capacity in the other party to the confidential relationship, and is intended to protect the other party from the influence naturally present in such a confidential relationship. Nicholson, 192 Va. at 277, 64 S.E.2d at 817; Stiers v. Hall, 170 Va. 569, 577-78, 197 S.E. 450, 454 (1938).

We have defined clear and convincing evidence as the degree of proof that provides the fact finder a firm belief or conviction regarding the allegations that a party seeks to establish. This evidentiary standard is intermediate in nature, exceeding the "preponderance" standard but not requiring the level of certainty in criminal cases of "beyond a reasonable

---

[5] Although Code § 6.1-125.5(A) generally provides a right of survivorship to a joint account holder in sums remaining on deposit on the death of another joint account holder, that statute is not applicable here because the presumption of fraud attached to Ernest's actions before Logan died.

10

doubt." Commonwealth v. Allen, 269 Va. 262, 275, 609 S.E.2d 4, 13 (2005); Judicial Inquiry & Review Comm'n v. Lewis, 264 Va. 401, 405, 568 S.E.2d 687, 689 (2002); Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).

Here, the Highlands transaction and the seven Wachovia transactions at issue are subject to a presumption of constructive fraud because Ernest either opened or renewed those accounts using his power of attorney. These transactions were consummated to Ernest's own benefit because he signed his name as a joint owner of all these accounts. Therefore, we review the evidence presented to determine whether the chancellor erred in concluding that Ernest failed to rebut the presumption of constructive fraud arising from those transactions.

In making this determination, we apply an established standard of review. With the exception of Millsap's testimony, the chancellor heard the evidence ore tenus and evaluated the witnesses' testimony and their credibility. Thus, his judgment is entitled to the same weight as a jury verdict. Forbes v. Rapp, 269 Va. 374, 379-80, 611 S.E.2d 592, 595 (2005); The Dunbar Group, LLC v. Tignor, 267 Va. 361, 366-67, 593 S.E.2d 216, 219 (2004). Accordingly, we will not set aside the chancellor's judgment on appeal unless it is plainly wrong or without evidence to support it. Code § 8.01-680; Forbes, 269

11

Va. at 380, 611 S.E.2d at 595; Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003).

In determining the credibility of the witnesses and the weight to be accorded their testimony, the chancellor may consider the appearance and manner of the witnesses, their bias, and their interest in the outcome of the case. Schneider v. Commonwealth, 230 Va. 379, 383, 337 S.E.2d 735, 737 (1985); see Cherrix v. Commonwealth, 257 Va. 292, 301-02, 513 S.E.2d 642, 648-49 (1999); Burket v. Commonwealth, 248 Va. 596, 614-15, 450 S.E.2d 124, 134 (1994); Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984). Here, the chancellor made findings against Ernest's credibility that were critical to the decision in the case.

The chancellor first observed that Ernest had contradicted himself on the crucial issue whether he or Logan had signed the eight Wachovia certificates. After making this observation, the chancellor accepted Dr. Miller's opinion that Logan had signed only one of those certificates. Upon the chancellor's own review of the documents, he plainly rejected Ernest's testimony, finding that "a handwriting expert is not needed to determine that each time 'Eva Belle Logan' was penned, that it was by the same person but that person was not Eva Belle Logan."

In reaching his decision, the chancellor also cited the fact that Ernest had not produced any documentary evidence to

12

support his position.  The chancellor stated in his letter opinion that "the [c]ourt relies on the fact that Ernest Grubb has not proven the existence of any records that indicate these accounts were joint with survivorship prior to the execution of the power of attorney."

Admittedly, the chancellor did not reference Millsap's testimony when considering the issue whether Ernest had rebutted the presumption of constructive fraud.  However, even if we assume that the chancellor accorded some weight to her testimony, we nevertheless conclude that the record supports his determination that Ernest failed to rebut the presumption with regard to the Wachovia certificates at issue.  Having completely rejected Ernest's credibility, the chancellor could properly conclude that the remainder of Ernest's evidence did not meet the clear and convincing standard.

Significantly, Millsap's testimony showed only a limited recollection of the circumstances surrounding the issuance of each certificate, and she had to rely on her knowledge and application of the bank's policy regarding the processing of such certificates.  In addition, Millsap could not testify that she observed either Ernest or Logan sign the signature cards for the certificate accounts.  Accordingly, we conclude that the evidence concerning the Wachovia certificates supports the chancellor's determination that Ernest failed to rebut the

13

presumption of constructive fraud with clear and convincing evidence.

We reach the same conclusion with regard to the Highlands certificate. The chancellor found that Ernest obtained the certificate by using his power of attorney, and that the funds for this certificate "were predominantly created by the sale of Eva Belle Logan's personal residence." Also noting that Ernest used his power of attorney to convey Logan's real estate, the chancellor held that "Ernest Grubb has not rebutted the presumption of constructive fraud in regard to this account." We conclude that the above-stated evidence plainly supports this determination. Thus, we hold that the chancellor did not err in ordering Ernest to pay to the estate the funds held in the Highlands certificate and the Wachovia certificates at issue.

We next consider the claims raised by Roy in his appeal. Roy first argues that the chancellor erred in holding that he could not adjudicate the issue of the Wachovia certificate held jointly by Meagan and Logan because Meagan was not made a party in the case. Roy contends that he was not required to make Meagan a party because he did not attack her ownership interest in the Wachovia certificate but merely sought to have Ernest account for and pay to the estate the amount of the funds he fraudulently converted in that account.

14

In response, Ernest observes that it is undisputed that Meagan is listed as a joint owner of the Wachovia certificate. Thus, Ernest maintains, if the chancellor were to determine that the funds from the certificate should be placed in the estate, Meagan's interest in those funds "will be totally and completely affected." We disagree with Ernest's argument.

In his cross bill, Roy alleged that Ernest breached his fiduciary duty to Logan when he removed the various amounts from her accounts and purchased the certificates of deposit at issue. Roy requested that the chancellor order Ernest "to pay unto the Estate of Eva Belle Logan the proceeds of all certificates of deposit . . . acquired by him from Eva Belle Logan . . . with interest thereupon from the date of said transfer."

A necessary party is a person, natural or artificial, who has a legal or beneficial material interest in the subject matter or event of the litigation. Jett v. DeGaetani, 259 Va. 616, 619, 528 S.E.2d 116, 118 (2000); Atkisson v. Wexford Assocs., 254 Va. 449, 455, 493 S.E.2d 524, 527 (1997); Kennedy Coal Corp. v. Buckhorn Coal Corp., 140 Va. 37, 49, 124 S.E. 482, 486 (1924). If such a person is not made a party to the suit, a decree cannot be rendered in the cause. Id. Among other things, the rule is designed to avoid having persons deprived of their property without giving them an opportunity to be heard

15

and defend their interests in the property.  Atkisson, 254 Va. at 456, 493 S.E.2d at 528.

In the present case, however, Roy did not seek to invalidate Meagan's ownership interest in the Wachovia certificate in which Meagan and Logan were listed as joint owners.  Roy also did not attempt to recover funds from that account, or ask that the chancellor take any other action regarding the account or Meagan.  Instead, Roy asked that Ernest be held liable to pay the amount of the proceeds held in that account, plus accumulated interest, to Logan's estate. Therefore, we hold that because Meagan's interest in the funds held in the Wachovia certificate could not be affected by Roy's claim and requested relief, she was not a necessary party to the suit and the chancellor erred in concluding otherwise.

Roy next argues that the chancellor abused his discretion in failing to award prejudgment interest on the amounts that Ernest was found to have fraudulently converted.  We disagree.

As Roy acknowledges in his argument, the award of prejudgment interest rests in the chancellor's sound discretion. Code § 8.01-382; see Tauber v. Commonwealth, 263 Va. 520, 544, 562 S.E.2d 118, 131 (2002); Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994); Skretvedt v. Kouri, 248 Va. 26, 36, 445 S.E.2d 481, 487 (1994).  Here, although the chancellor refused Roy's request for prejudgment interest, the

16

chancellor ordered that Ernest pay the interest accrued during the course of this litigation on the account funds that were fraudulently converted. We hold that this provision was a reasonable exercise of the court's discretion, and that the chancellor did not abuse his discretion by failing to award prejudgment interest.

Finally, Roy argues that the circuit court abused its discretion by denying his motion under Rule 4:12(c) for costs and attorneys' fees for failing to provide accurate answers in response to Roy's requests for admission. In his request for admissions, Roy asked Ernest to admit that, for each of the accounts at issue, Ernest signed Logan's name. In response to each such request, Ernest either denied that he had signed Logan's name, denied that Logan had not signed her name, or stated that he could neither admit nor deny who had signed a particular document because he could not recall that information.

We conclude that the chancellor did not abuse his discretion in denying Roy's request for costs and fees. Although these issues of fact on which admissions were sought were ultimately decided against Ernest, he had a reasonable basis for failing to admit the signatures on the Wachovia certificates based on Millsap's testimony. See Rule 4:12(c)(3). While Ernest did not have similar corroborative evidence to

17

support his testimony regarding the remaining accounts in dispute, we nevertheless conclude that the chancellor did not exceed the broad discretion granted him by this Rule in denying the requested relief.  See Erie Ins. Exch. v. Jones, 236 Va. 10, 14, 372 S.E.2d 126, 128 (1988).

In conclusion, we will reverse the part of the chancellor's judgment holding that Meagan was a necessary party to the claims involving Exhibit # 3, the Wachovia certificate that listed her as a joint owner.  We will affirm all remaining parts of the chancellor's judgment before us in this appeal.

Accordingly, we will affirm in part, and reverse in part, the chancellor's judgment and remand the case for further proceedings related to Exhibit #3, the Wachovia certificate bearing Meagan Marie Grubb's name as a joint owner of that account.

Affirmed in part,
reversed in part,
and remanded.