Present: Hassell, C.J., Lacy, Koontz, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

GILBERT R. BAILEY                          OPINION BY
                                SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 060713                   January 12, 2007

LINDA D. TURNBOW, EXECUTRIX
OF THE ESTATE OF ANNERBELL BREWER

    FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
          Russell I. Townsend, Jr., Judge Designate

     In this case, the chancellor held that a deed to real

property had been procured by undue influence and set the deed

aside.  That holding was premised upon the chancellor's

finding that a confidential relationship existed between the

grantor and the grantee, giving rise to a presumption of undue

influence, which the grantee had failed to rebut.  This appeal

questions the sufficiency of the evidence to support that

finding.

                    Facts and Proceedings

     In accordance with familiar principles, the pertinent

facts will be stated in the light most favorable to the party

prevailing at trial, Linda D. Turnbow, the Executrix of the

Estate of Annerbell M. Brewer.  Annerbell M. Brewer was a

widow who had lived alone in her home in the City of

Chesapeake after her husband's death in 1989.  She had no

children, but had twelve nieces and nephews.  Two of these

resided near her and helped her in various ways during her

widowhood. Her niece, Mary B. Crawford, handled her financial affairs from 1993 until Mrs. Brewer's death. Mrs. Crawford arranged for the services of caregivers for her aunt, ensured that her bills were paid, balanced her checkbooks and, in the last year of Mrs. Brewer's life, maintained a joint checking account with her. Mrs. Crawford's husband testified that his wife spent the majority of her time in looking after Mrs. Brewer's business affairs in the year before she died. On several occasions while recuperating from serious illnesses, Mrs. Brewer temporarily lived with the Crawfords until she was well enough to return home.

Mrs. Brewer also had a close relationship with a nephew, Gilbert R. Bailey, who was a builder and developer. Bailey had been close to his aunt as a child. Mrs. Brewer and her husband had bought a house from Bailey's parents and later exchanged it for a piece of land Bailey owned, on which Bailey built a house for the Brewers in 1963. Mrs. Brewer still lived in that house at the time of her death. That property is the subject of this suit. Bailey "kept the repairs up on the house" and Mrs. Brewer became dependent upon him for transportation in her later years. There is no evidence, however, that she relied on him for any advice or assistance with regard to her business or financial affairs.

In 1989, Mrs. Brewer executed her last will in which, after two legacies, she left the residue of her property to her husband and, if he should not survive her, to her twelve named nieces and nephews in equal shares. The will named one of the nieces, Linda Dee Turnbow, as executrix if Mrs. Brewer's husband should not survive her. Mr. Brewer died soon after the will was executed.

On June 14, 1997, Mrs. Brewer "signed herself into [a] nursing home for 30 days." She was then 82 years old. She stayed nearly two months, but often went home with Ann Bailey, Gilbert Bailey's wife, during the day, returning to the nursing home at night. On about August 7, 1997, Mrs. Brewer called Ann Bailey and said that she was "signing herself out" of the nursing home and "wanted to come home." Ann Bailey sent an employee to pick Mrs. Brewer up and take her home. Thereafter, Mrs. Brewer spent some nights in the Bailey home and some nights in her own home, but during the last month of her life resided primarily with the Baileys. During that time, Ann Bailey helped her with such physical needs as meals, seeing to her medications and helping her to bathe. Mary Crawford, however, continued to handle her financial affairs. Mrs. Brewer died on October 15, 1997.

Soon after she had left the nursing home, Mrs. Brewer went with Gilbert Bailey to the office of the Department of

Motor Vehicles and transferred the title of her automobile to the joint ownership of herself and Bailey.  Later, she told Bailey that she wanted to transfer the title of her house to him as well.  He testified that she said that "she wanted to do her house just like she'd done the car so that she would have it, and then at her death, I would own it."  Bailey testified that he asked her several times thereafter if she was sure that was what she wanted to do and she said "that's what she wanted."  She explained that she wanted the house to remain in the family, and that she wanted Bailey to keep it and ultimately pass it on to his young grandson.

Bailey consulted his attorney, who prepared a deed of gift, conveying Mrs. Brewer's property to Gilbert Bailey in fee simple, but reserving a life estate in Mrs. Brewer. Bailey picked up the deed from the attorney's office and took it to his home.  On September 4, 1997, Mrs. Brewer came into the house after a drive with Ann Bailey and asked him whether he had the deed.  He showed it to her, read it in full to her, and asked her if it was what she wanted.  She replied that it was "exactly what she wanted" and signed it in the presence of a notary public who was employed by the Baileys and was working in the office they maintained in the basement of their home. Bailey subsequently had the deed recorded.

After Mrs. Brewer's death, Linda Dee Turnbow qualified as executrix under Mrs. Brewer's will and filed this suit against Gilbert Bailey. Her bill of complaint asked that the deed be set aside and alleged undue influence, fraud, "intentional interference with inheritance," unjust enrichment, decedent's lack of mental capacity, conspiracy and forgery. The chancellor sustained a demurrer to the count alleging "intentional interference with inheritance" on the ground that no such cause of action exists in Virginia.

The chancellor heard the evidence ore tenus at a five-day trial, took the case under advisement and filed a letter opinion dismissing all the Executrix' claims except undue influence. The chancellor ruled that the complainant had failed to carry her burden of proving forgery, that there was no credible evidence that Mrs. Brewer was mentally incapacitated in any way, and that the evidence did not support the Executrix' allegations of fraud, unjust enrichment or conspiracy. The chancellor further held that the Executrix had failed to prove undue influence with respect to the transfer of title to Mrs. Brewer's motor vehicle. The chancellor ruled, however, that the Executrix had carried her burden to prove a confidential relationship between Bailey and Mrs. Brewer giving rise to a presumption of undue influence, which Bailey had failed to rebut, in the procurement of the

5

challenged deed. The chancellor entered a final decree setting aside and canceling the deed. We awarded Bailey an appeal.

## Analysis

Applying familiar principles of appellate review, we will accept the chancellor's findings of fact unless they are plainly wrong or without evidence to support them. Friendly Ice Cream Corp. v. Beckner, 268 Va. 23, 33, 597 S.E.2d 34, 39 (2004). In that case, we restated the principles of law applicable here:

> A court of equity will not set aside a contract because it is "rash, improvident or [a] hard bargain" but equity will act if the circumstances raise the inference that the contract was the result of imposition, deception, or undue influence. To set aside a deed or contract on the basis of undue influence requires a showing that the free agency of the contracting party has been destroyed. Because undue influence is a species of fraud, the person seeking to set aside the contract must prove undue influence by clear and convincing evidence.
>
> Direct proof of undue influence is often difficult to produce. In the seminal case of Fishburne v. Ferguson, 84 Va. 87, 111, 4 S.E. 575, 582 (1887), however this Court identified two situations which we considered sufficient to show that a contracting party's free agency was destroyed, and, once established, shift the burden of production to the proponent of the contract. The first involved the mental state of the contracting party and the amount of consideration:
>
> > [W]here great weakness of mind concurs with gross inadequacy of consideration, or circumstances of suspicion, the transaction

will be presumed to have been brought about by undue influence.

. . . .

The second instance <u>Fishburne</u> identified arises when a confidential relationship exists between the grantor and proponent of the instrument:

[W]here one person stands in a relationship of special confidence towards another, so as to acquire an habitual influence over him, he cannot accept from such person a personal benefit without exposing himself to the risk, in a degree proportioned to the nature of their connection, of having it set aside as unduly obtained.

<u>Id.</u> at 31-32, 597 S.E.2d at 38-39 (internal citations omitted.

Because the chancellor found no evidence to support a finding of weakness of mind on Mrs. Brewer's part, his holding must rest entirely upon the second condition discussed by <u>Fishburne</u>: the existence of a "confidential relationship" between the parties to the deed. Although the law in other jurisdictions differs, in Virginia we have adhered to the view that a close family relationship, even the relationship of parent and child, will not, alone, give rise to a confidential relationship creating a presumption of undue influence. <u>Nuckols v. Nuckols</u>, 228 Va. 25, 36-37, 320 S.E.2d 734, 740 (1984). Instead, for the presumption to arise, the party asserting it must establish, by clear and convincing

7

evidence, an agency relationship in which one party is bound to act for the benefit of another and can take no advantage to himself,[*] or between family members when one member bears also an attorney-client relationship to another member, or "when one family member provides financial advice or handles the finances of another family member."  Friendly Ice Cream Corp., 268 Va. at 34, 597 S.E.2d at 40 (emphasis added).  See also Economopoulos v. Kolaitis, 259 Va. 806, 812-13, 528 S.E.2d 714, 718 (2000).

Tested by that standard, the evidence in the present case is insufficient to support the chancellor's finding. The only evidence of financial advice or assistance to Mrs. Brewer by a family member was that given by Mary Crawford, not by Bailey.  The chancellor expressly found that the transfer of title to Mrs. Brewer's car was free of undue influence.  The only other business relationship between the parties to the deed shown by the evidence was the exchange of lands between them in 1963 and Bailey's construction of the Brewers' home.  There was no evidence

[*] The Executrix did not allege or prove an attorney-client or agency relationship between the parties to the deed and the chancellor made no such finding. Accordingly, we confine our holding to the chancellor's finding that a confidential relationship had been shown.

8

indicating that to have been anything other than an arms-length business transaction.  A mere commercial relationship, even where the parties like and trust each other, is insufficient to establish a confidential relationship.  Friendly Ice Cream Corp., 268 Va. at 34-35, 597 S.E.2d at 40.  Because the complainant failed to present evidence sufficient to establish a confidential relationship, no presumption of undue influence arose to shift the burden of production to Bailey.

## Conclusion

Because we find the chancellor's decision to be unsupported by the evidence, we will reverse the decree appealed from and enter final judgment in favor of Bailey.

Reversed and final judgment.