Present:  All the Justices

ESTATE OF AUDREY JANE PARFITT, BY
JANICE PARFITT CAUSEY, ADMINISTRATOR, CTA

v.  Record No. 081100    OPINION BY JUSTICE DONALD W. LEMONS
                                 February 27, 2009
JEFFREY E. PARFITT, ET AL.

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Gaylord L. Finch, Jr., Judge

     In this appeal, we consider whether the trial court erred

in dismissing a complaint filed by the administrator of the

Estate of Audrey Jane Parfitt ("Estate") against the

decedent's son, Jeffrey E. Parfitt, and his wife, Boyka S.

Parfitt.

                   I.  Facts and Proceedings Below

     Before her 2004 cancer diagnosis, Audrey Jane Parfitt

(known as "Jane") executed a will leaving her entire estate in

equal shares to her children and stepchildren.  Throughout her

final illness, Jane required considerable physical assistance

to complete even the most basic daily tasks.  During this

time, she received help from hired caregivers, as well as from

her son, Jeffrey E. Parfitt ("Jeff"), and his wife, Boyka S.

Parfitt ("Boyka").

     With the knowledge and assent of his brother Gordon Vance

Parfitt ("Vance"), who lived out of state, Jeff was added as a

joint owner of Jane's bank account ("joint account") in order

to assist Jane in paying her bills.  Jane, Jeff, and Vance

also agreed that Jeff would quit his construction job to care for Jane until care providers could be hired, and that Jeff would pay himself $500.00 per week from the joint account to make up for his lost income. Although care providers were hired in July 2004, Jeff did not return to work until after Jane's death in March 2006.

During this period, Jeff liquidated a number of Jane's assets and obtained various loans, depositing the proceeds into the joint account. The sources of funds used in these transactions included an annuity from New York Life surrendered for $106,093.05, a certificate of deposit from BB&T Bank worth $14,675.66, a home equity loan also from BB&T Bank in the amount of $50,000, a certificate of deposit from USAA Federal Savings Bank worth $12,811.41, and a reverse mortgage obtained from Seattle Mortgage Company in the amount of $155,000. The total value of assets deposited in the joint account as a result of these transactions was at least $338,580.12.

During the period of Jane's illness, Jeff transferred $305,591.00 from the joint account to an account he shared with Boyka. Jeff also wrote checks to himself from the joint account totaling $67,500. Additionally, Jeff wrote checks from the joint account to various payees in the amount of $9,013.37 for his and Boyka's benefit.

2

Jane died on March 7, 2006. In July 2006, the Estate filed a complaint against Jeff, alleging breach of fiduciary duty, conversion, unjust enrichment, and including a claim in detinue. Boyka was added as a defendant on the same claims in a November 2006 amended complaint.

After a three-day bench trial, the trial court entered an order holding that (i) the Estate had failed to establish the existence of undue influence; (ii) the evidence had not established a confidential relationship between Jeff and Jane; and, (iii) the Estate had failed to prove a claim in detinue, for conversion, or for unjust enrichment. We awarded an appeal to the Estate on the following assignments of error:

1. The court made an error of fact in determining that Plaintiff did not demonstrate that Jane Parfitt's free agency was destroyed.

2. The court made an error of law in determining that Plaintiff did not demonstrate a confidential relationship existed between Jeffrey Parfitt and Jane Parfitt.

3. The court made an error of law in determining that Plaintiff did not demonstrate a prima facie claim of undue influence, thereby shifting the burden of proof to the Defendants.

4. The court made an error of law in determining that Plaintiff did not prove a claim of conversion or unjust enrichment.

5. The court made an error of fact and law in not determining that Defendants' testimony should be struck for lack of corroboration pursuant to Virginia Code § 8.01-397.

3

6.   The court made an error of law in not finding that Jeffrey Parfitt breached his fiduciary duty to Jane Parfitt.

                    II.   Analysis

                 A.   Undue Influence

               1.   Standard of Review

In dismissing the Estate's claims, the trial court rejected the Estate's contention that it had introduced sufficient evidence to establish, as a matter of law, a prima facie case of undue influence.  Whether a plaintiff alleging undue influence has established a prima facie case is reviewed de novo, see Virginia Baptist Homes, Inc. v. Botetourt County, 276 Va. 656, 663, 668 S.E.2d 119, 122 (2008); Quatannens v. Tyrrell, 268 Va. 360, 365, 601 S.E.2d 616, 618 (2004), with deference given to the factual findings of the trial court, see Friendly Ice Cream Corp. v. Beckner, 268 Va. 23, 33, 597 S.E.2d 34, 39 (2004).

     2.   Personal Benefit and Confidential Relationship

We recently reiterated the law of undue influence in Virginia:

     A court of equity will not set aside a
     contract because it is "rash, improvident or
     [a] hard bargain" but equity will act if the
     circumstances raise the inference that the
     contract was the result of imposition,
     deception, or undue influence.  To set aside a
     deed or contract on the basis of undue
     influence requires a showing that the free
     agency of the contracting party has been

                        4

destroyed.  Because undue influence is a species of fraud, the person seeking to set aside the contract must prove undue influence by clear and convincing evidence.

Direct proof of undue influence is often difficult to produce.  In the seminal case of Fishburne v. Ferguson, 84 Va. 87, 111, 4 S.E. 575, 582 (1887), however this Court identified two situations which we considered sufficient to show that a contracting party's free agency was destroyed, and, once established, shift the burden of production to the proponent of the contract.  The first involved the mental state of the contracting party and the amount of consideration:

> [W]here great weakness of mind concurs with gross inadequacy of consideration, or circumstances of suspicion, the transaction will be presumed to have been brought about by undue influence.

. . . .

The second instance Fishburne identified arises when a confidential relationship exists between the grantor and proponent of the instrument:

> [W]here one person stands in a relationship of special confidence towards another, so as to acquire an habitual influence over him, he cannot accept from such person a personal benefit without exposing himself to the risk, in a degree proportioned to the nature of their connection, of having it set aside as unduly obtained.

Bailey v. Turnbow, 273 Va. 262, 267, 639 S.E.2d 291, 293 (2007) (quoting Friendly Ice Cream Corp., 268 Va. at 31-32, 597 S.E.2d at 38-39 (internal citations omitted)).  "[T]he

5

presumption of undue influence arises and the burden of going forward with the evidence shifts when weakness of mind and grossly inadequate consideration or suspicious circumstances are shown or when a confidential relationship is established." Friendly Ice Cream Corp. 268 Va. at 33, 597 S.E.2d at 39 (emphases in original). This presumption will satisfy the plaintiff's burden of proving undue influence unless it is rebutted. The defendant therefore has the burden of producing evidence sufficient to rebut the presumption.

These principles apply to gratuitous transfers as well as contracts. The Estate contends it demonstrated, by clear and convincing evidence, that both situations described in Fishburne were present here and that, under either analysis, the trial court should have shifted to Jeff and Boyka the burden of producing evidence sufficient to rebut the presumption of undue influence. However, in this case we need not decide the issue of Jane's weakness of mind, because a confidential relationship was established as a matter of law by Jeff's joint ownership of the bank account through which all the assets at issue flowed.

First, it is undisputed that by virtue of their actions with regard to Jane's property, Jeff and Boyka received considerable personal benefit. This is a necessary precondition for the burden to be shifted when a transaction

6

is challenged on the ground that it was procured by undue influence in a confidential relationship.  Friendly Ice Cream Corp., 268 Va. at 31-32, 597 S.E.2d at 38-39.

We next turn to whether a confidential relationship was established.  We discussed the general outline of such relationships in Friendly Ice Cream Corp., which described a confidential relationship as

> not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself.  It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible.

> Trust alone, however, is not sufficient.  We trust most men with whom we deal.  There must be something reciprocal in the relationship before the rule can be invoked.  Before liability can be fastened upon one there must have been something in the course of dealings for which he was in part responsible that induced another to lean upon him, and from which it can be inferred that the ordinary right to contract had been surrendered.

Friendly Ice Cream Corp., 268 Va. at 33-34, 597 S.E.2d at 39-40 (quoting Hancock v. Anderson, 160 Va. 225, 240-41, 168 S.E. 458, 463 (1933) (citation omitted)).  We have identified several particular classes of relationships that may give rise to a presumption of undue influence.  Among them, and most

7

relevant in this appeal, is when one person is an agent for the other.  <u>Bailey</u>, 273 Va. at 268, 639 S.E.2d at 293.

In this case, Jeff was an agent for Jane by statute, as a joint owner of an account to which he had not contributed. Code § 6.1-125.15:1 provides that "[p]arties to a joint account in a financial institution occupy the relation of principal and agent as to each other, with each standing as a principal in regard to his ownership interest in the joint account and <u>as agent in regard to the ownership interest of the other party</u>." (Emphasis added).  The transfers challenged in this case passed through an account that Jane and Jeff held as joint owners with right of survivorship.  The evidence at trial indicated that the proceeds from the New York Life annuity and the Certificates of Deposit from BB&T and USAA were deposited into the joint account.  Furthermore, proceeds from the home equity line of credit Jane obtained from BB&T were also deposited to the joint account as a "counter deposit."  Likewise, $155,000 obtained under the reverse mortgage was deposited into the joint account.  These funds all belonged to Jane.

Because Jeff did not contribute any funds to Jane's account, he was, by operation of statute, an agent with regard to the entire account.  By statute, a confidential relationship was established creating a fiduciary duty.  Code

8

§ 6.1-125.15:1; Horne v. Holley, 167 Va. 234, 241, 188 S.E. 169, 172 (1936) ("[A]n agent is a fiduciary with respect to the matters within the scope of his agency").  The confidential relationship created a presumption that the self-dealing transactions were "unduly obtained."  Fishburne, 84 Va. at 113, 4 S.E. at 582.  Accordingly, the trial court erred in holding that there was no confidential relationship, and therefore erred in failing to shift the burden of production to Jeff and Boyka to rebut the presumption of undue influence in the various transactions.

## B.   Dead Man's Statute

The Estate also argues that the entire trial testimony of Jeff and Boyka should have been stricken in accordance with Code § 8.01-397, Virginia's "dead man's statute," and that the trial court's failure to do so constituted reversible error.  In this case, the dead man's statute requires corroboration of testimony of an adverse or interested party in an action concerning the decedent's estate.

### 1.   Standard of Review

"Whether or not corroboration exists and the degree and quality required are to be determined by the facts and circumstances of the particular case."  Nicholson v. Shockey, 192 Va. 270, 283, 64 S.E.2d 813, 821 (1951).  However, if the trial court failed to identify the correct legal standard in

9

determining the level of corroboration required, then it is an issue of law that, like other issues of law, must be reviewed de novo.

### 2. Level of Corroboration Required

The statute relied on by the Estate reads in relevant part:

> In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony.

Code § 8.01-397. We have often been called on to apply the statute, and have made it clear that

> [i]t is not necessary that the corroborative evidence should of itself be sufficient to support a verdict, for then there would be no need for the adverse or interested party's testimony to be corroborated. Corroborating evidence tends to confirm and strengthen the testimony of the witness[,] and it may come from other witnesses as well as from circumstantial evidence. It is not essential that a survivor's testimony be corroborated on all material points.
>
> The corroboration, to be sufficient under the statute, however, must at least tend, in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings [and] testified to by the [surviving] witness . . . which allegation or issue, if unsupported, would be fatal to the case.

10

Rice v. Charles, 260 Va. 157, 165-66, 532 S.E.2d 318, 323 (2000) (citations, emphases by the Court, and internal quotation marks omitted). Additionally, "[w]here a confidential relationship existed between the parties at the time of the transaction relied on, a higher degree of corroboration is required than in ordinary transactions." Clay v. Clay, 196 Va. 997, 1002, 86 S.E.2d 812, 815 (1955) (citing Nicholson, 192 Va. at 283, 64 S.E.2d at 821).

Here, the trial court denied the Estate's motion to strike Jeff and Boyka's testimony based on the dead man's statute. In doing so, the trial court found that Jeff and Boyka's testimony was sufficiently corroborated by the defendants' witnesses and by the Estate's own "exhibits and demonstrative preparations." However, given the trial court's erroneous holding that no confidential relationship existed, we must conclude that the trial court did not apply the "higher degree of corroboration" as it was required to do.

C.   Conversion or Unjust Enrichment

Finally, the Estate also contends the trial court erred in holding that it failed to prove either conversion or unjust enrichment by Jeff and Boyka. However, the Estate failed to address either issue in its brief, and consequently has waived the argument on appeal.

11

Rule 5:27, titled "Opening Brief of Appellant," requires that "[t]he form and contents of the opening brief of appellant shall conform in all respects to the requirements . . . set forth in Rule 5:17(c)"). Rule 5:17(c), in turn, instructs that with respect to any assignments of error in the petition for appeal, the appellant shall include "[t]he principles of law, the argument, and the authorities relating to each assignment of error." Rule 5:17(c)(4). Rule 5:27 therefore requires that the same elements be included in the opening brief for each granted assignment of error. The failure to comply with the requirements of Rules 5:27 and 5:17(c)(4) results in waiver of the arguments the party failed to make. Jay v. Commonwealth, 275 Va. 510, 519, 659 S.E.2d 311, 316 (2008). The Estate has violated Rule 5:27 by failing to include any "principles of law," "argument," or "authorities" relating to this granted assignment of error. Consequently, the Estate has waived these arguments on appeal.

### III. Conclusion

The trial court erred in holding that a confidential relationship did not exist with respect to transactions involving the joint bank account. Flowing from this error, the trial court then erred in application of evidentiary burdens regarding proof of undue influence and corroboration necessary under the dead man's statute. Accordingly, we will

12

reverse the judgment of the trial court and remand the matter for a new trial consistent with this opinion. At a new trial of this matter, the Estate is not precluded from offering proof of undue influence on any basis including the confidential relationship created by application of Code § 6.1-125.15:1. However, the failure to argue claims of conversion and unjust enrichment on appeal will preclude the Estate from presenting those claims upon retrial.

<u>Reversed and remanded</u>.

13