# CIRCUIT COURT OF HENRICO COUNTY

Cynthia Hines Miller,
Administrator
of the Estate of
Barbara Hines,
deceased  .

v.

Jessie Clayton

## May 30, 2013

By Judge Catherine C. Hammond

This matter is before the Court following trial without a jury on February 25, 2013. Counsel submitted memoranda of law on April 3 and April 10, 2013.

Barbara Hines died intestate in 2011, at the age of 72. She had been living alone since her husband's death in 1999. Ms. Hines had many health problems, including vision trouble, obesity, alcoholism, and mental illness. She did not drive and had trouble managing her home.

Ms. Hines' daughter, Cynthia Miller, testified that she and her siblings had a strained relationship with her mother. However, Ms. Miller also said that, even given Ms. Hines' problems, Ms. Miller expected her mother to be able to handle responsibilities administering Mr. Hines' estate. In 2000, Ms. Miller moved to Northern Virginia and her contact with her mother became very infrequent. She visited her mother less than once a year. Ms. Hines would not open the door when Ms. Miller came to visit. Ms. Hines did not answer the telephone when Ms. Miller called.

Jessie Clayton lived next door to the Hines for many years. Ms. Miller testified that her family had no relationship with the Claytons before the death of Mr. Hines in 1999. Ms. Clayton testified that she befriended Ms. Hines after Mr. Hines' death.

Ms. Clayton began taking Ms. Hines shopping every Tuesday. She gave her rides to appointments, to the bank, and to the social security office. Ms. Clayton kept a detailed log of many tasks she performed to help Ms. Hines. For example, Ms. Clayton made calls to get electricity service for Ms. Hines. Ms. Clayton's daughter, Patricia Howard, testified that Ms. Hines came over for Thanksgiving dinner each year from 1999 to 2009, and that Ms. Hines asked Mr. and Ms. Clayton to handle her mail.

On December 14, 2007, Ms. Hines and Ms. Clayton went to C & F Bank at its Varina Branch in Henrico County, where they opened a joint account with right of survivorship. Ms. Hines deposited funds into the account; Ms. Clayton did not. Charlotte Thornton, an employee of C & F Bank testified. She knew Ms. Hines and remembered both women coming to the bank. Ms. Thornton recalled explaining all of the rights and duties of joint owners at that time. She testified that nothing seemed amiss and Ms. Hines said she wanted the joint account for her social security direct deposits.

On December 2, 2008, Ms. Hines granted a power of attorney to Ms. Clayton. Ms. Clayton testified that the power of attorney was proposed and conceived by the attorney who drafted it and notarized it, Everett Felts. Ms. Clayton said that she did not ask for the power of attorney.

Soon after becoming attorney-in-fact, Ms. Clayton together with Ms. Hines purchased five certificates of deposit at C & F Bank, titled jointly with right of survivorship and funded solely with Ms. Hines' money:

A. Certificate 2040630 for $20,000.00 with original issue date of 12/16/08;

B. Certificate 2040631 for $40,000.00 with original issue date of 12/16/08;

C. Certificate 2040998 for $40,000.00 with original issue date of 1/13/09;

D. Certificate 2041082 for $41,698.54 with original issue date of 1/20/09;

E. Certificate 2041198 for $12,017.65 with original issue date of 1/27/09.

At trial, Ms. Clayton could not remember anything about the certificate of deposit transactions in 2008 and 2009. She did recall the bank visit in 2007 and testified that Ms. Hines "wanted me on her account."

In mid-2010, Ms. Hines and Ms. Clayton went back to C & F Bank and met with David Hartz, an employee. Mr. Hartz testified that he helped Ms. Hines consolidate some of her late husband's accounts. Ms. Hines opened an IRA with $60,000 and made Massey Cancer Center the beneficiary. She also purchased two annuities and chose Massey Cancer Center as beneficiary.

On October 19, 2010, Ms. Hines was admitted to the hospital, where her gangrenous leg was amputated.

On November 6, 2010, Ms. Miller went to her mother's home and learned from Ms. Clayton that Ms. Hines was in the hospital. Ms. Miller took photographs of her mother's home, which was in terrible condition. There was trash piled in the yard, and the bathtub was not usable.

On November 8, 2010, while Ms. Hines was in the hospital, Ms. Clayton redeemed a certificate of deposit for $44,062.98, and it was paid to the joint account.

When Ms. Hines left the hospital, she went to a nursing facility, was readmitted to the hospital, and then returned to a nursing facility. She died in the nursing facility on May 4, 2011.

At Ms. Hines' death, Ms. Clayton received all the funds from the certificates of deposit. Ms. Clayton testified she put the money in her own account where it is preserved. Ms. Miller filed this Complaint seeking recovery of funds for Ms. Hines' estate. Ms. Miller advances two theories: fraud and undue influence.

Ms. Hines and Ms. Clayton had a confidential relationship in 2007 as they were joint owners of the bank account. The confidential relationship creates a fiduciary duty. Va. Code Ann. § 6.2-619. If a person on a joint account does not contribute any funds to the account, then she is an agent with regard to the entire account. *Parfitt v. Parfitt*, 277 Va. 333, 342 (2009). In *Parfitt*, a mother's will left everything to her sons and stepchildren. 277 Va. at 337. During the mother's illness, her son, Jeff, became her caretaker, and they created a joint account with rights of survivorship. Jeff eventually transferred over $300,000 to the joint account he held with his wife and wrote checks to himself totaling over $67,000. *Id.* at 338. The Circuit Court erred in not shifting the burden to Jeff to rebut the presumption of undue influence under these facts. *Id.* at 342. The confidential relationship creates a presumption that transactions benefitting Ms. Clayton were "unduly obtained." *Id.* at 342. Once a confidential relationship is established and transactions are made to benefit one party while acting as a fiduciary, as here, there is a presumption of fraud. *Grubb v. Grubb*, 272 Va. 45, 53 (2006). The burden of proof then shifts to the defendant who must provide clear and convincing evidence to rebut the presumption. *Id.* Likewise, the presumption of undue influence arises when a confidential relationship is established. *Friendly Ice Cream Corp. v. Beckner*, 268 Va. 23 (2004).

Ms. Clayton argues that she has overcome the presumption of fraud. She points to the testimony of Charlotte Thornton to argue that Ms. Hines understood the consequences of the joint account and freely chose to benefit Ms. Clayton. Ms. Clayton relies on *Nicholson v. Shockey*, 192 Va. 270 (1951), where joint accounts with rights of survivorship were created between a mother and her son. The issues before the Court were whether the mother had fully understood the nature of the transactions, and whether the bank employee could corroborate the son's testimony that the mother acted freely. The son did not prevail.

After considering all the testimony and exhibits and the cases cited above, I find that the evidence is insufficient to overcome the presumption of fraud. Ms. Thornton's testimony was clear and convincing that she explained the joint account to Ms. Hines in 2007, but that does not resolve the issue. Creating a joint checking account for social security income, impliedly for use in paying living expenses, is different from making decisions twelve months later to invest over $150,000.00 in bank certificates of deposit. Even if Ms. Hines understood the nature and consequences of a joint checking account in 2007, which I find that she did, it does not follow that a year later she automatically had the same understanding and intent with respect to different transactions.

Ms. Thornton's testimony did not address the certificates of deposit. Likewise, Ms. Clayton's testimony did not address the creation or purchase of the certificates of deposit in December 2008 and January 2009. Unlike the son in *Nicholson*, Ms. Clayton did not testify about Ms. Hines' intent to benefit her fiduciary, and thus there was nothing much for the C & F Bank employees to corroborate. Ms. Clayton could not remember the transactions, yet she put the money from the certificates of deposit in her own personal account within seven days after Ms. Hines' death. Underlying all of this is the overwhelming evidence of Ms. Hines' declining physical and mental health, her reclusiveness, and her dependence upon Ms. Clayton for transportation and other assistance. As in *Nicholson*, the fiduciary here had the advantage, and there was not clear and convincing evidence to show that Ms. Hines was acting voluntarily and with full knowledge of the transactions.

Judgment will be entered for the Plaintiff, on behalf of Ms. Hines' estate, for any funds received by Jessie Clayton on or after October 19, 2010, from the certificates of deposit.