Present:  Kinser, C.J., and Lemons, Goodwyn, Millette, Mims, and Powell, JJ., and Koontz, S.J.

SHARA AYERS, ET AL.

OPINION BY
v. Record No. 122043     SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
September 12, 2013
TONI L. SHAFFER, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Sage B. Johnson, Judge


In this appeal, we consider whether the circuit court erred in sustaining a demurrer to an amended complaint alleging that certain inter vivos financial transfers, which significantly reduced a decedent's estate, were the result of undue influence exercised by persons in confidential relationships with the decedent during her lifetime.

STANDARD OF REVIEW

Familiar principles of appellate review guide our resolution of this appeal.  This case was decided on demurrer.  "A demurrer admits the truth of all material facts properly pleaded.  Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged."  Rosillo v. Winters, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988); see also Runion v. Helvestine, 256 Va. 1, 7, 501 S.E.2d 411, 415 (1998).  "A demurrer tests the legal sufficiency of facts alleged in the

pleadings, but not the strength of proof.  Because the decision whether to grant a demurrer is a question of law, we review the circuit court's decision de novo."  Kaltman v. All Am. Pest Control, Inc., 281 Va. 483, 489, 706 S.E.2d 864, 867-868 (2011) (citation omitted).  "Additionally, when, as here, a circuit court sustains a demurrer to an amended complaint that does not incorporate or refer to any of the allegations that were set forth in a prior complaint, 'we will consider only the allegations contained in the amended pleading to which the demurrer was sustained.'"[1]  Lewis v. Kei, 281 Va. 715, 719, 708 S.E.2d 884, 888 (2011) (quoting Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 102, 540 S.E.2d 134, 136 (2001)).

PROCEDURAL BACKGROUND

The original complaint in this action was filed in the Circuit Court of the City of Bristol on November 7, 2011, and an amended complaint was filed by leave of court on February 27, 2012.  We will consider the allegations in the amended complaint under the standard of review cited above.

---

[1] Although the amended complaint did not expressly incorporate any of the allegations of the original complaint, it did reference exhibits attached to the original complaint. Accordingly, those exhibits, which were already a part of the record, are properly considered part of the amended complaint for purposes of resolving the demurrer.  See Rule 3:4(b).

When so viewed, the amended complaint established that the plaintiffs, Shara Ayers and Ryan Riley, are the great grandchildren of Elsie R. Smith ("Elsie") and legatees to one half of her residuary estate under a will dated August 3, 2004. This will was admitted to probate following Elsie's death on March 22, 2010. The defendants are Audrey Wingo ("Audrey"), Elsie's sister and legatee to the remaining half of her residuary estate, Toni Lynn Shaffer ("Toni"), her husband Bruce Shaffer ("Bruce"), and their son Michael T. Shaffer ("Mike"). Elsie's will nominated Toni as executrix, and she qualified as executrix of Elsie's estate on April 14, 2010.

Ayers and Riley acknowledge that Elsie had become estranged from their mother, Elsie's only living grandchild and nearest living lineal descendent, and that they had lived with their mother in Colorado "for a number of years." During this time, Elsie and her husband, Charles Smith ("Charles"), lived on their farm in Washington County. In 2004, both Elsie and Charles were in poor health and no longer able to care for themselves and manage their property and affairs without assistance. Beginning April 1, 2004, Toni and Bruce, who lived nearby, began providing assistance to the Smiths.

Charles died on April 23, 2004. Elsie, who was then 80 years old and suffered from diabetes, dementia and other

medical problems, suffered a rapid decline in her mental and physical health following Charles' death. The Shaffers continued providing care to Elsie, assisting her with the daily activities of living as well as managing her property and affairs.

On May 13, 2004, Elsie went to the office of attorney H.G. Peters where she executed a durable power of attorney ("DPOA") naming Toni as her agent and attorney-in-fact and Bruce as alternate agent and attorney-in-fact. The amended complaint expressly alleges that "at least [from] the time when Toni Shaffer became [Elsie]'s agent under the DPOA, and until her death, [Elsie] lacked the mental and physical capacity . . . to seek and obtain independent advice on her own; to fully understand the complexities and effects of most financial transactions." However, the amended complaint further alleges that this lack of capacity did not impair Elsie's ability "to decide whom she wished her assets to pass to upon her death, and to express those wishes in her Will."

On August 3, 2004, Elsie, Toni, and Bruce returned to Peters' office where Elsie executed her last will and testament. Article VI of the will references a "contract with Toni Shaffer and her husband, Bruce Shaffer" which was executed in Peters' office that day. The contract stated that Toni and Bruce would provide "needed care" for Elsie for which

4

they would be paid $500 per week.  Additionally, Toni and Bruce were to receive $8000 for the assistance given to Elsie and Charles since April 2004.  The agreement further provided that Toni and Bruce would "be paid the monies owed by [Elsie] from [her] estate," rather than during her lifetime.  Likewise, the will directed "payment of any and all sums due pursuant to [this] contractual agreement," but otherwise made no bequest to Toni or Bruce.  The amended complaint expressly acknowledges that Toni and Bruce provided care under the agreement over the next three years, during which time Elsie became "increasingly disoriented, calling [Toni and Bruce] several times daily, and at nights."

On October 29, 2007, Elsie began residing in an assisted living facility in Bristol, Tennessee, where her daily needs became the responsibility of the staff.  In July 2008, she was admitted to a local hospital and then moved to a nursing home, where she received round-the-clock care from the staff.  During this time, under the authority of the DPOA, Toni sold Elsie's home and the farm.  Accordingly, the amended complaint alleges that after October 2007 the need for any assistance from the Shaffers in caring for Elsie and managing her property and affairs was greatly diminished or eliminated entirely.

Following Elsie's death on March 22, 2010, an initial accounting of her estate filed by Toni in her capacity as executrix showed that at the time of her death Elsie had cash assets in excess of $1,000,000. However, as a result of certain inter vivos financial transactions which included survivorship or pay on death provisions, the probate estate was less than $600,000. The amended complaint alleges that these inter vivos transactions occurred after Toni was made Elsie's agent and attorney-in-fact under the DPOA, and were the result of Elsie's "complete dependence upon, and justified trust in Toni" and the "strong confidential relationship" that existed between Elsie and Toni and Bruce, under which they "owed [Elsie] the highest degree of fidelity."

The general background allegations of the amended complaint conclude with the assertion that it "relates to activities and conduct by Toni Shaffer, after being appointed as agent for [Elsie] under the DPOA, and that of [Elsie]'s sister, Audrey Wingo, from 2004 until shortly after [Elsie]'s death in 2010." Other than to reference her relationship to Elsie and identify her as a residuary legatee of Elsie's will, no other allegations concerning Audrey are found in the general allegations of the amended complaint.

The amended complaint then lists a series of "financial transactions involving Toni Shaffer while serving as [Elsie]'s

6

agent under the durable power of attorney."  Despite this

description, however, it is not alleged that any of the

transactions were accomplished using the authority of the

DPOA.  These transactions may be summarized as follows:

- On May 21, 2004, Elsie signed a customer access agreement for an account at Wachovia Bank.  Sometime prior to March 2009, the account was redesignated as "Elsie R. Smith and Toni Shaffer, POA."  Following Elsie's death, the final statement of the account showed only Elsie as the owner and indicated that the balance of $83,467.89 was withdrawn from the account by a cashier's check payable to Audrey directly, rather than to Elsie's estate.

- On June 22, 2004, Elsie, accompanied by Toni and Audrey, transferred the balance of an account at First Tennessee Bank titled solely in her name into a certificate of deposit of $80,500.00 titled jointly with Toni and Audrey with right of survivorship.  Toni and Audrey received the proceeds from this account following Elsie's death.

- On November 23, 2004, Elsie, accompanied by Toni and Audrey, transferred the balance of a certificate of deposit at Highlands Union Bank titled solely in her name into a certificate of deposit of $75,018.13 titled jointly with Toni and Audrey with right of survivorship. When the certificate matured in November 2008, Toni, acting as a joint holder of the account, received a cashier's check for $87,769.85, with which she opened a certificate of deposit at Wachovia Bank in the name of Elsie, herself, and Bruce and a pay on death designation in favor of Audrey and Benjamin Shaffer ("Benjamin"), the Shaffers' grandson.  Following Elsie's death, Mike, Benjamin's father, received half the proceeds of the certificate as custodian for Benjamin, and Audrey received the remainder.

- On September 7, 2007, Toni redeemed certificates of deposit at TruPoint Bank and Wachovia Bank for $97,260.56 and $53,766.84 respectively and deposited these funds into an account at Wachovia Securities titled jointly with right of survivorship in Elsie's and her names. Following Elsie's death, Toni withdrew the account balance of $156,976.08 and deposited these funds into an

7

account titled in her name only.  This account was later retitled in the Shaffers' names jointly.

The amended complaint sets out 11 counts which can be summarized as follows: Counts 1, 2 and 3 allege breach of a "duty as an agent on a joint bank account" by Audrey, Bruce and Toni respectively and seek to recover funds for inclusion in Elsie's estate.  Counts 4, 5 and 6 seek to set aside all transactions that directly or indirectly benefited Toni, Bruce and Audrey respectively in that they were "procured by undue influence" and to recover those funds for inclusion in Elsie's estate.  Counts 7 and 8 seek to remove Toni as executrix of Elsie's estate and to assess damages against her for waste of the estate's assets.  Counts 9 and 11 are alleged to be "against all defendants," but make no express allegations against Mike, the Shaffers' son, and seek a declaratory judgment concerning Elsie's testamentary intent and establishing a constructive trust for any unjust enrichment of the defendants.  Count 10 seeks a declaratory judgment against Toni and Bruce with respect to their contract for personal services with the Smiths to determine the amount of compensation, if any, they are due from the estate.

As relevant to this appeal, within the various counts the amended complaint repeatedly asserts that Toni, Bruce and Audrey each had a confidential relationship with Elsie and

that "[w]here one standing in a confidential relationship to another person receives a benefit from that person without an exchange of full and fair compensation, a presumption arises that the benefit resulted from the exercise of undue influence. This presumption is sufficient to satisfy Plaintiffs' burden of establishing a prima facie case of undue influence."

On March 19, 2012, the defendants jointly filed a demurrer to the amended complaint. The defendants alleged that the amended complaint as a whole fails to state any cause of action because it asserts that Elsie had testamentary capacity. They contended, therefore, that Elsie was likewise competent to undertake the financial transactions in which she personally participated. Moreover, they contended that since Elsie personally participated in these transactions, Toni's role as agent and attorney-in-fact are not relevant to establishing whether she had a confidential relationship with Elsie as to these transactions.

The defendants further contended that the amended complaint fails to allege "facts, as opposed to legal conclusions, sufficient to establish that the defendants abused their confidential relationship with Elsie Smith." This was so, they contended, because Ayers and Riley are "rely[ing] upon an evidentiary presumption in order to . . .

9

circumvent their pleading requirements." Finally, the defendants generally denied that the amended complaint adequately states grounds for the declaratory relief sought, for the establishment of a constructive trust, or for removing Toni as executrix of the estate and charging her with waste.

As relevant to this appeal, Ayers and Riley responded to the demurrer by asserting that Elsie's capacity to personally participate in some of the financial transactions did not negate the possibility that she engaged in those transactions as a result of the undue influence of the defendants. Moreover, they contended that it was not necessary that Toni act directly in her capacity as Elsie's agent and attorney-in-fact for the confidential relationship implied by that role to give rise to an inference of undue influence, especially where she benefited disproportionately from the transactions. Ayers and Riley further responded that the facts alleged in the amended complaint support the evidentiary presumption, that the circuit court was required to accept these allegations as true and, thus, also that the presumption would apply. Similarly, they contended that the allegations of the complaint as a whole support the claims for equitable relief to restore a portion of Elsie's estate.

The circuit court conducted a hearing on the demurrer to the amended complaint on July 25, 2012. The parties presented

arguments in accord with their positions stated above. At the conclusion of the hearing, the court opined that the demurrer would be sustained because the amended complaint was "devoid of any allegation that [Toni] took any specific act under her Durable Power of Attorney to include herself on any account that [Elsie] had titled solely in her name." In the court's view, the existence of the DPOA was irrelevant to whether any action taken personally by Elsie was the result of undue influence, because the confidential relationship implied by the existence of a power of attorney was relevant only to transactions accomplished by virtue of a party acting as an attorney-in-fact.

In a final order entered August 21, 2012, the circuit court found that

> the Amended Complaint merely alleges that the defendant, Toni Shaffer, transported and accompanied [Elsie] when [Elsie] signed various documents including her will, general power of attorney, and various bank documents adding Ms. Shaffer and others as joint owners of various accounts. Significantly, the Amended Complaint fails to state facts that allege that Toni Shaffer, while acting as an agent under the power of attorney, arranged for [Elsie]'s assets to pass at death to Toni Shaffer or the other named defendants. To the contrary, the exhibits attached to plaintiffs' Amended Complaint indicate that the assets in question were retitled by [Elsie] personally.

> The plaintiffs argued that the fact that [Elsie] executed a power of attorney naming Mrs. Shaffer as an agent calls into question the validity of any subsequent transfer from the principal to the agent. The plaintiffs' assertion is not the law in

Virginia. Additionally, plaintiffs continue to rely upon the evidentiary presumption that where an agent acts under a power of attorney to consummate a transaction to the benefit of the agent, the act is presumptively fraudulent. . . . [P]laintiffs' reliance is misplaced inasmuch as there is no allegation in the Amended Complaint that Mrs. Shaffer acted under the power of attorney to consummate any transaction to the benefit of the agent.

The circuit court further found that "the plaintiffs' remaining pleadings which attempt to set forth various theories of recovery against the defendants fail to allege facts sufficient to state a cause of action." The court neither addressed nor made any express ruling with regard to the defendants' argument that the amended complaint fails to adequately plead that Elsie could have been subject to undue influence by Toni or others because it also alleges that she had testamentary capacity to make her will. Ayers and Riley filed written exceptions to the court's judgment, and this appeal followed.

### DISCUSSION

At the outset, we will clarify what aspects of the amended complaint are before us in this appeal. In their assignments of error addressing the sustaining of the demurrer, Ayers and Riley expressly identify Counts 1, 2, 3, 4, 5 and 6 of the amended complaint as having been erroneously dismissed by the circuit court. As the court's order

12

sustained the demurrer as to all 11 counts, we hold that Ayers and Riley have abandoned Counts 7, 8, 9, 10 and 11 by failing to make these claims the subject of an assignment of error. WBM, LLC v. Wildwoods Holding Corp., 270 Va. 156, 164, 613 S.E.2d 402, 407 (2005). Because only Counts 9 and 11 assigned liability to "all defendants" and no other count predicated any liability against the Shaffers' son Mike, we further hold that the court's judgment is final as to him.

We clearly and concisely stated the law of undue influence in the formation of contracts in Parfitt v. Parfitt, 277 Va. 333, 672 S.E.2d 827 (2009). What we said there bears repeating here.

> A court of equity will not set aside a contract because it is "rash, improvident or [a] hard bargain" but equity will act if the circumstances raise the inference that the contract was the result of imposition, deception, or undue influence. To set aside a deed or contract on the basis of undue influence requires a showing that the free agency of the contracting party has been destroyed. Because undue influence is a species of fraud, the person seeking to set aside the contract must prove undue influence by clear and convincing evidence.

> Direct proof of undue influence is often difficult to produce. In the seminal case of Fishburne v. Ferguson, 84 Va. 87, 111, 4 S.E. 575, 582 (1887), however this Court identified two situations which we considered sufficient to show that a contracting party's free agency was destroyed, and, once established, shift the burden of production to the proponent of the contract. The first involved the mental state of the contracting party and the amount of consideration:

13

> [W]here great weakness of mind concurs
> with gross inadequacy of consideration, or
> circumstances of suspicion, the
> transaction will be presumed to have been
> brought about by undue influence.
>
> . . . .

The second instance Fishburne identified arises when a confidential relationship exists between the grantor and proponent of the instrument:

> [W]here one person stands in a
> relationship of special confidence towards
> another, so as to acquire an habitual
> influence over him, he cannot accept from
> such person a personal benefit without
> exposing himself to the risk, in a degree
> proportioned to the nature of their
> connection, of having it set aside as
> unduly obtained.

277 Va. at 339-40, 672 S.E.2d at 829 (quoting Bailey v. Turnbow, 273 Va. 262, 267, 639 S.E.2d 291, 293 (2007)).

Thus, "the presumption of undue influence arises and the burden of going forward with the evidence shifts [to the defendant] when weakness of mind and grossly inadequate consideration or suspicious circumstances are shown or when a confidential relationship is established." Friendly Ice Cream Corp. v. Beckner, 268 Va. 23, 33, 597 S.E.2d 34, 39 (2004) (emphases in original); accord Parfitt, 277 Va. at 340, 672 S.E.2d at 829. Such a confidential relationship is "not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal

14

terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible." Friendly Ice Cream Corp., 268 Va. at 34, 597 S.E.2d at 39-40 (internal citation omitted); accord Parfitt, 277 Va. at 341, 672 S.E.2d at 830.

We have further explained that "[t]rust alone, however, is not sufficient. We trust most men with whom we deal. There must be something reciprocal in the relationship before the rule can be invoked. Before liability can be fastened upon one there must have been something in the course of dealings for which he was in part responsible that induced another to lean upon him, and from which it can be inferred that the ordinary right to contract had been surrendered." Friendly Ice Cream Corp., 268 Va. at 34, 597 S.E.2d at 40.

"We have identified several particular classes of relationships that may give rise to a presumption of undue influence. Among them . . . is when one person is an agent for the other." Parfitt, 277 Va. at 341, 672 S.E.2d at 830 (citing Bailey, 273 Va. at 268, 639 S.E.2d at 293). Undeniably, one such relationship is that between a principal and a person authorized to act as her agent and attorney-in-fact. Grubb v. Grubb, 272 Va. 45, 53, 630 S.E.2d 746, 751 (2006). Importantly, in such cases, the presumption of undue

15

influence will "arise[] independently of any evidence of actual fraud, or of any limitations of age or capacity in the other party to the confidential relationship, and is intended to protect the other party from the influence naturally present in such a confidential relationship."  Id. at 54, 630 S.E.2d at 751 (emphasis added).

A confidential relationship "springs from any fiduciary relationship, and when such relationship is found to exist, any transaction to the benefit of the dominant party and to the detriment of the other is presumptively fraudulent." Nicholson v. Shockey, 192 Va. 270, 278, 64 S.E.2d 813, 817. (1951)(emphasis added).  Thus, whenever a fiduciary relationship exists between parties, the existence of one or more transactions which benefit the party who owes a fiduciary duty to the other shifts the burden of proving the bona fides of the transaction to the party owing the duty.  Id. at 277, 64 S.E.2d at 817.  It is not necessary that the transaction be accomplished directly as a result of the fiduciary relationship, but rather, it is the fact that "a confidential relationship existed between the parties at the time of the transaction" that gives rise to the presumption and the shifting of the burden of going forward with the evidence. Diehl v. Butts, 255 Va. 482, 489, 499 S.E.2d 833, 838 (1998); Friendly Ice Cream Corp., 268 Va. at 33, 597 S.E.2d at 39.

16

From this summary of the law, it is clear that to survive a demurrer, a complaint seeking to set aside a contract or other transaction favorable to a defendant or her interests because of undue influence by the defendant must allege either that because of great weakness of mind of the other party the defendant obtained the bargain for grossly inadequate consideration or under some other circumstance of suspicion, or alternately that a confidential relationship existed between the parties at the time of a transaction beneficial to the defendant, even in the absence of other suspicious circumstances. Both allegations will support a finding of undue influence resulting in a fraudulent transaction, and may be pled independently or in the alternative.

Because the two circumstances that will suffice to allege undue influence are not interdependent, the capacity, or lack thereof, of the party allegedly defrauded by the defendant to conduct her own business is not relevant to establishing a presumption of undue influence based upon the existence of a confidential relationship. Likewise, the absence of an allegation of a confidential relationship alone would not defeat a claim that the undue influence arose from the defendant taking advantage of the other party's diminished capacity. In short, while it may frequently be the case that a claim of undue influence may be supported by allegations

17

that the defendant both overbore the will of the other party through weakness of mind and also took advantage of a confidential relationship, in considering a demurrer to such claims the trial court must evaluate the sufficiency of each theory independently.

Although the amended complaint in this case contains allegations that the defendants exercised undue influence over Elsie both through her diminished capacity and as a result of confidential relationships, it is clear that the circuit court's determination to grant the demurrer was premised only on its determination that there was no confidential relationship between Elsie and Toni.  The court concluded that because the transactions were conducted by Elsie personally, or by Toni as a joint account holder, no confidential relationship between Elsie and Toni arose by virtue of the DPOA, which in the court's view precluded any presumption of undue influence.  Without elaborating further, the court summarily concluded that the amended complaint also failed to allege facts sufficient to find that a confidential relationship existed between Elsie and either Bruce or Audrey.[2]

_____

[2] The circuit court made no express ruling on whether the amended complaint adequately pled facts to support a finding that one or more of the defendants exercised undue influence over Elsie because of her weakness of mind in obtaining a benefit for inadequate consideration or under other suspicious circumstances, and neither party has addressed that issue in

Ayres' and Riley's first assignment of error challenges the circuit court's ruling that there was no confidential relationship between Elsie and Toni because the transactions at issue did not require Toni to exercise her powers under the DPOA.  Unquestionably, the amended complaint pleads that Toni was in a position of trust and exercised habitual influence over Elsie, as evidenced by Elsie having entrusted the management of her property and affairs to Toni though the DPOA, such that a confidential relationship existed between Elsie and Toni.  Contrary to the court's ruling and the position urged by the defendants below and in this appeal, it was not necessary under the allegations of the amended complaint for Toni to have exercised her authority under the DPOA to accomplish the transactions that benefited her or others close to her for the presumption of undue influence to apply.  Accordingly, we hold that the circuit court erred in ruling that no confidential relationship could arise between Elsie and Toni solely because Toni may not have exercised her powers under the DPOA with respect to the challenged transactions.

this appeal.  Accordingly, we express no opinion on whether the amended complaint would have supported a cause of action based on the alternate method of proving undue influence.

We now consider the issue raised by Ayers and Riley in their second assignment of error challenging the sustaining of the demurrer as to Counts 1, 2 and 3. In each of these counts, the amended complaint alleges that a confidential relationship existed between Elsie and Audrey, Toni, and Bruce respectively because they were each parties to a joint account with Elsie for which she provided all the assets.

Code § 6.2-619(A) provides that "[p]arties to a joint account in a financial institution occupy the relation of principal and agent as to each other, with each standing as a principal in regard to his ownership interest in the joint account and as agent in regard to the ownership interest of the other party." In Parfitt we explained that where, as in this case, a joint account is established between two parties under which all the assets are contributed by one party, the second party becomes "an agent with regard to the entire account. By statute, a confidential relationship was established creating a fiduciary duty [and] a presumption that the self-dealing transactions were unduly obtained." 277 Va. at 342, 672 S.E.2d at 830 (internal citations and quotation marks omitted). Under such circumstances, it need not be alleged or proven that the defendant procured the creation of the joint account by undue influence. Rather, the existence of the account itself imposes a fiduciary duty on the

20

defendant and with regard to a subsequent transaction creates the presumption of undue influence which shifts to the defendant the burden of proving the bona fides of the transaction. Id.; Nicholson, 192 Va. at 277, 64 S.E.2d at 817.

Because the amended complaint alleges that Audrey, Toni, and Bruce were each made co-owners of one or more accounts with Elsie for which Elsie provided all the funds, under Code § 6.2-619(A) a confidential relationship existed between each of the three and Elise as a matter of law with respect to those accounts, and the burden would fall upon each of them to rebut the presumption that the transactions were the result of undue influence.[3] Accordingly, we hold that the circuit court erred in sustaining the demurrer as to Counts 1, 2 and 3.

In their third assignment of error, Ayers and Riley challenge the circuit court's sustaining the demurrer as to

---

[3] Because this case was decided on a demurrer, we are not here concerned with what quantum of evidence the defendants would need to present to rebut the presumption of fraud arising from the statutorily-imposed confidential relationship between joint owners of an account. Indeed, it is self-evident that such evidence will be case specific and, thus, should be decided by a trier-of-fact on evidence adduced at trial. It is also self-evident, however, that these transactions clearly reduced Elsie's estate, that neither Toni nor Bruce are legatees under Elsie's will, and that, as she is a residuary legatee under the will, Audrey's share of the estate could be increased if funds were to be recovered for the estate as a result of this litigation.

21

Counts 4, 5 and 6, which respectively asserted that Toni, Bruce and Audrey each had a confidential relationship with Elsie apart from that implied by the creation of the joint accounts. We have already determined that the court erred in finding that no confidential relationship arose between Toni and Elsie because of the DPOA. Moreover, even without the existence of the DPOA, the amended complaint contains allegations that would support a finding that a confidential relationship developed between Elsie and Toni. Specifically, it is alleged that Elsie was "dependent on Toni . . . for both physical and mental/intellectual assistance" calling upon her both day and night. Likewise, in Count 5, the complaint alleges that "[e]ven without the confidential relationship arising . . . from the multi-owner bank account, a confidential relationship existed between [Elsie] and . . . Bruce . . . because of the aid Mr. and Mrs. Smith needed and requested" from him.

A confidential relationship will not necessarily arise in every case where a person requests or receives regular aid from another. Nonetheless, when the amended complaint is viewed as a whole, it is clear that Elsie was alleged to have relied almost exclusively on Toni and Bruce to maintain her property and for most of her daily needs and activities until October 2007, and a reasonable inference can be made that

22

Elsie was dependent on Toni and Bruce to such an extent that a confidential relationship existed between them. Given the standard of review applicable to a demurrer, we hold that the circuit court erred in sustaining the demurrer as to Counts 4 and 5.

With respect to Audrey, the amended complaint alleges in Count 6 that a confidential relationship between her and Elsie was demonstrated by the fact that Audrey "collaborated with Toni Shaffer in the handling of [Elsie]'s financial affairs, and especially in the process of persuading [Elsie] to sign documents to accomplish many of the . . . transactions which Toni Shaffer proposed, advised, or persuaded [Elsie] to participate in," and that when Elsie was accompanied by Audrey to the banks to conduct these transactions, "[s]he was completely under the influence of, and dependent upon Toni Shaffer and/or her sister, Audrey Wingo. This was especially true in regard to the management of her financial affairs." Additionally, there are allegations that the familial relationship between Elsie and Audrey was of a confidential nature "especially after certain events caused [Elsie] to distrust her granddaughter (Plaintiffs' mother)."

While these allegations are less specific than those concerning Toni and Bruce, they nonetheless constitute facts and reasonable inferences which, taken as true, give rise to

23

the existence of a confidential relationship and the consequent presumption of undue influence upon Elsie in those transactions that benefited Audrey. Accordingly, we hold that the circuit court erred in sustaining the demurrer to the amended complaint with respect to Count 6.[4]

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court sustaining the demurrer to the amended complaint as to Counts 7, 8, 9, 10 and 11, and the dismissal of Michael T. Shaffer as a defendant. We will reverse the judgment of the circuit court sustaining the demurrer to the amended complaint as to Counts 1, 2, 3, 4, 5 and 6, and remand the case to the circuit court for further proceedings consistent with the views expressed in this opinion.

---

[4] We will briefly address an issue raised by Ayers' and Riley's fourth assignment of error. As framed, this assignment of error asserts that the circuit court erred in determining that Toni was entitled to reimbursement of her costs in defending the suit as executrix of the estate. Ayers and Riley contend that this was error because the suit was filed against Toni only in her personal capacity. While the court stated from the bench that it would allow reimbursement of costs incurred by Toni on behalf of the estate, neither the final order nor any other order entered by the court memorialized an award of costs and, thus, there is no ruling on this issue to review. However, because we will remand the case for further proceedings, the court may revisit the question of whether Toni is entitled to reimbursement of any costs of this litigation if they were incurred in her capacity as executrix.

                                          Affirmed in part,
                                          reversed in part,
                                          and remanded.